Steven E. GIFFORD, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 774–87C.

United States Claims Court.

April 18, 1991.

Guy J. Ferrante, Falls Church, Va., for plaintiff.

John S. Groat, Washington, D.C., with whom were Asst. Atty. Gen. Stuart M. Gerson, Director David M. Cohen, and Maj. David Yastishock, Office of the Judge Advocate Gen., Dept. of the Army, of counsel, for defendant.

## OPINION

ROBINSON, Judge:

This military pay case is before the court on defendant's motion to dismiss or in the alternative for summary judgment, and plaintiff's cross-motion for summary judgment. Briefing of the issues is complete. Oral argument was held on November 8, 1989. Thereafter, by agreement of the parties, the case was stayed by order of the court for an indefinite period to permit a final determination and issuance of a judg-

ment in *Tilley v. United States*, 19 Cl.Ct. 33 (1989), a similar case which was also pending before this court. That stay order was lifted by a subsequent order of this court after the court's decision in *Tilley* became final. For reasons hereafter set forth, defendant's motion to dismiss or in the alternative for summary judgment will be denied, and plaintiff's cross-motion for summary judgment will be granted in part with the remaining issue of the validity of plaintiff's Officer Effectiveness Report (OER) for the period August 6, 1982 through February 5, 1983 (February 1983 OER) remanded to the AFBCMR pursuant to RUSCC 60.1(a)(1).

## FACTS

Plaintiff, Technical Sergeant (TSgt.) Steven E. Gifford, is an active duty member of the Regular Air Force and is currently in Saudi Arabia participating in Operation Desert Storm. Plaintiff originally enlisted in the Air Force in December 1977. It is not disputed that his three years of service immediately following his enlistment were superb.

After unsuccessfully applying to Officer Training School (OTS) a number of times, plaintiff submitted an application with a request for several follow-on assignments, one of which was missile launch duty. He was accepted and later graduated from OTS as Distinguished Graduate. On February 23, 1982, plaintiff was appointed a Second Lieutenant in the Reserve of the Air Force and voluntarily ordered to active duty.

Plaintiff's first assignment shortly after graduation from OTS was to Vanderberg AFB, California, for Missile Combat Crew Initial Qualification Training (IQT). While stationed at Vanderberg, plaintiff excelled in his overall performance in IQT. In May 1982, plaintiff first learned the specifics of

the highly classified Emergency War Order (EWO) and Single Integrated Operation Plan (SIOP), which address this country's nuclear weapons policies and various targeting options for their implementation. He was informed, among other things, that such implementation, contrary to his prior understanding of this country's nuclear policy, could mean that this country might launch an offensive or preemptive nuclear first strike, as opposed to a purely defensive nuclear strike. Further, he was informed of the possibility of such a nuclear strike being made against non-military or purely civilian targets.

After plaintiff, in conformity with the requirements of AFR 35–99,[1] reported his ethical aversion to such nuclear targeting strategies to the Personnel Reliability Program (PRP) Monitor, he was promptly interviewed by a flight surgeon, a legal officer, and a chaplain. During these interviews, plaintiff reaffirmed his doubts concerning these policies and their implementation.[2] As a direct result of these expressions of moral compunction respecting this use of nuclear weapons, he was suspended from IQT on May 25, 1982 until his PRP status could be resolved. On June 4, 1982, he was permanently decertified under the PRP and eliminated from the IQT program. He was sent to Grand Forks AFB, North Dakota, where he performed full-time duties unrelated to the missile launch program.

On July 9, 1982, Lt. Col. Gary Nelson,[3] Commander, 448th Strategic Missile Squadron, Grand Forks AFB, recommended that discharge proceedings be initiated against plaintiff under AFR 36–2, ¶ 4c, rather than AFR 36–3, because plaintiff "volunteered" for missile duty, and because he believed that plaintiff had always had reservations about missile duty, but accepted that assignment as an ulterior means of earning a

---

1. AFR 35–99, Personnel Reliability Program. This regulation establishes "the requirements and responsibilities for screening, selecting, and continuously evaluating all personnel who control, handle, have access to, control the launch of, or control entry to, nuclear weapons or nuclear weapon systems."

2. At no time was he informed that these Air Force policies involving such use of nuclear weapons were incorrect as they had been stated to him during his IQT.

3. Lt. Col. Nelson was promoted from the rank of Major at some time during the various proceedings against plaintiff.

Master's degree, and after exiting from missile duty, attaining a chaplaincy.

Thereafter, on July 17, 1982, discharge action under AFR 36–2 was initiated against plaintiff by Col. Frank B. Horton, III, Commander, 321 Strategic Missile Wing, Grand Forks AFB.[4] The basis for the action was plaintiff's elimination from IQT "by reason of factors over which [he] had control." Col. Horton alleged that plaintiff "entertained reservations about missile duty when [he] volunteered for such duty and when [he] applied for Officer Training School and when [he] accepted [his] commission." Plaintiff was specifically notified that AFR 36–2, ¶ 4c was the reason for the discharge action, he was given a copy of this regulation and invited to "familiarize" himself with that regulation for an understanding of the various procedures, rights, and options it provided.

On August 31, 1982, plaintiff was notified that a Selection Board had convened under Section C, AFR 36–2 and determined that he be required to show cause for retention (show cause) in the Air Force. The charge was that he had failed to complete a military training school, where attendance "was at government expense and the failure to complete training was reasonably traced to factors over which he had control." He was again referred to AFR 36–2 for information as to procedures, rights, and options.

A Board of Inquiry (BOI) convened on November 4, 1982 pursuant to Section D, AFR 36–2, to consider whether plaintiff should be discharged because his failure to complete IQT was due to factors over which he had control. Before the BOI, three North Dakota officers testified in favor of plaintiff's discharge,[5] and six other officers testified in favor of his retention. Since the issue was framed under AFR 36–2 as to whether plaintiff had control over his disqualification from IQT, their testimony collectively related to plaintiff's morals, ethics, and honesty.

Plaintiff testified that what he had learned during IQT was of such magnitude that he was "morally unable" rather than "unwilling" to "turn the key" knowing that the deaths of untold innocent civilians would result. He further testified, that an officer's oath encompasses an overriding responsibility to insure that he acts morally, ethically, legally, and with integrity. However, the BOI concluded that plaintiff had failed to complete IQT because of reasons over which he had control. It determined he should not be retained and recommended a general discharge under honorable conditions.

On February 25, 1983, the Air Force Board of Review convened, pursuant to AFR 36–2 ¶ 2, found that plaintiff had failed to establish cause for retention and recommended an honorable discharge pursuant to AFR 36–2.

On May 25, 1983, the Secretary of the Air Force (Secretary) directed that the AFR 36–2 proceeding against plaintiff be terminated and "by direction of the President," he ordered that plaintiff's appointment be terminated pursuant to AFR 36–3 and that he be honorably discharged effective June 30, 1983. He was discharged on that date with a DD 214 reflecting an "Involuntary Discharge: Substandard Performance."[6]

---

4. Col. Horton's recommendation was for a general discharge, as opposed to an honorable discharge.

5. Col. Horton testified that plaintiff's failure had to be within his control because he was not physically disabled, mentally incapacitated, nor insane at the time. Col. McAndrews testified that there was no place in the Air Force for someone who will not go "whenever, wherever the President of the United States decides to send you." Lt. Col. Nelson testified that plaintiff "self-eliminated himself from a school due to factors over which he can reasonably be certain he had control." Lt. Col. Nelson also stated that he was willing to launch a nuclear missile knowing that it "was going towards a purely civilian target with no military implications or value at all" because he "assumed" and "hoped" that the people giving the orders had determined there to be some military significance to the target. He testified further that plaintiff was "useless" because he could not make that same assumption.

6. A form DD–214 is a Certificate of Release or Discharge From Active Duty.

Plaintiff had received a February 1983 OER, covering his duty assignment at Grand Forks AFB. One rater, Maj. Douglas D. Greathouse, was highly complimentary of his performance and potential, while plaintiff's additional rater, Lt.Col. Nelson, rated him far below standard. Lt. Col. Nelson premised his low rating upon plaintiff's statement that "he could not perform the missile duties for which he was being trained." Plaintiff, upon pursuit of OER appeal procedures, in rebuttal, argued that Lt.Col. Nelson's comments were inappropriate because he had not observed his performance during the rating period—his rating was based upon an incident which arose outside the rating period—and Lt. Col. Nelson had presumed that plaintiff was guilty of misconduct under AFR 36–2 before a decision had been made in that proceeding.

Plaintiff's indorser, Col. Charles P. McAndrews, reviewed plaintiff's rebuttal and concurred with Lt.Col. Nelson. Col. McAndrews stated, "I have personal knowledge of the factors affecting his performance during the period of this report, including his qualification of duties during testimony on November 4, 1982. I conclude that his future service in the Air Force in any capacity is untenable." The Officer Personnel Records Review Board, upon review of plaintiff's appeal and pursuant to AFR 31–11,[7] refused plaintiff's request to delete the ratings and comments of Lt.Col. Nelson and Col. McAndrews, or the OER itself, and denied the appeal.

On or about August 1, 1983, or approximately one month after plaintiff's discharge, plaintiff was informed that pursuant to AFR 36–3, he was authorized to enlist in the Air Force in the grade of staff sergeant—the rank he held prior to attending OTS. He did re-enlist and it is unchallenged that since that time his performance has been of the highest caliber.

On June 18, 1986, plaintiff submitted an application to the Air Force Board for the Correction of Military Records (AFBCMR or Correction Board) pursuant to 10 U.S.C. § 1552, seeking, among other things, vacation of his discharge, reinstatement as an officer, correction of his records to show continuous active duty service as an officer, and deletion of the February 1983 OER. He argued that: his discharge under AFR 36–3 was legally null and void since none of the requirements of that regulation were satisfied; his discharge was void because he was denied the "elementary due process right" to a hearing on the real reason for his ultimate discharge; the recommendation of the BOI was, in any event, unsupported by the evidence; his discharge was unjust and unwarranted by the circumstances; and, the contested OER should be deleted from his personnel records because it reflects events outside the rating period, refers to as-yet incomplete administrative actions, is not based upon actual observations by the rating chair, is inaccurate, and was generally prepared in violation of controlling regulations.

On October 21, 1987, plaintiff received notification that a majority of the AFBCMR[8] had denied his application on the grounds that "insufficient evidence had been presented to demonstrate the existence of probable error or injustice." The majority also concluded that: the proceedings were proper because the Secretary of the Air Force has "statutory authority to make rules and regulations to operate the Department of the Air Force;" the Secretary's determinations are "final and conclusive;" plaintiff's discharge under AFR 36–3 was "less derogatory" than one under AFR 36–2; and, no due process violations occurred because the hearing plaintiff received allowed for a "fair and balanced" determination. Thus, the AFBCMR concluded that the BOI had not abused its discretion; its proceedings did not violate AFR 11–31; plaintiff was not improperly

---

**7.** AFR 31–11—Correction of Officer and Airman Evaluation Reports—governs OER appeal procedures which plaintiff pursued prior to filing his application with the Air Force Board for the Correction of Military Records.

**8.** Two of the three Correction Board members.

processed; the Secretary did not abuse his authority in ordering plaintiff's discharge pursuant to AFR 36–3; and, the February 1983 OER was proper because it "appeared" that the ratings were not erroneous or based on "improper considerations."

Plaintiff filed his complaint in this court on December 18, 1987, alleging that his discharge was illegal and that the AFBCMR's denial of his application was arbitrary, capricious, contrary to law, and not supported by substantial evidence. Plaintiff is requesting that this court grant the same relief he sought administratively, including a monetary judgment in the amount of back pay, and other entitlements denied him since June 30, 1983.

Defendant, in its motion, opposes the granting of all relief sought by plaintiff.

## DISCUSSION

Since the court has considered matters presented by the parties outside of the pleadings, it must treat defendant's motion to dismiss or in the alternative for summary judgment as a motion for summary judgment.[9] The disposition of a case on motion for summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. RUSCC 56(c). In evaluating a motion for summary judgment, the court is compelled to resolve any doubt about the existence of a genuine issue of fact in favor of the nonmoving party. *Housing Corporation v. United States*, 199 Ct.Cl. 705, 710, 468 F.2d 922, 924 (1972). In this case, neither party, in opposing the other party's motion for summary judgment, has raised any genuine issue of material fact that would preclude summary judgment. Therefore, the court finds that the issue of liability in this case is ready for disposition on the parties' cross-motions for summary judgment. *Hodosh v. Block Drug Co.*, 786 F.2d 1136, 1141 (Fed.Cir.1986) *cert. denied*, 479 U.S. 827, 107 S.Ct. 106, 93 L.Ed.2d 55

(1986); *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562–63 (Fed. Cir.1987).

In this case, defendant's motion for summary judgment alleges that this court has no review power over plaintiff's discharge because plaintiff's commission was subject to termination "at the pleasure of the President" and this court "may not review" the discharge because it was "a matter committed solely to the discretion of the President." Defendant next alleges that this court may not review the exercise of discretion to terminate plaintiff's Reserve Officer commission for substandard performance.

Defendant alternatively argues, that even if this court can review plaintiff's discharge proceedings, plaintiff cannot demonstrate by clear and convincing evidence that the AFBCMR's decision to uphold the findings of the BOI, was arbitrary, capricious, not supported by substantial evidence, or contrary to law.

Contrary to plaintiff's allegations, defendant contends that the AFBCMR found that the Secretary's actions regarding discharge under AFRs 36–2 and 36–3 are final and conclusive. Defendant argues that Section A, ¶ 1.e. of both AFRs 36–2 and 36–3 gives the Secretary the authority to waive or grant exceptions to any provision of these regulations.[10] Defendant argues that an agency's interpretation of its regulations is entitled to great deference and that the Secretary acted reasonably in interpreting the regulations to permit plaintiff to be discharged for substandard performance under AFR 36–3 rather than the more serious charge of misconduct under AFR 36–2. Defendant contends that had plaintiff been discharged under AFR 36–2 he would have been ineligible for his subsequent reenlistment in the Air Force as a non-commissioned officer.

Defendant also alleges that because of the similarity of procedures for discharge under AFRs 36–2 and 36–3, plaintiff was not deprived of due process of law since he

---

**9.** Hereafter, the court will refer to defendant's motion to dismiss or in the alternative for summary judgment, as a motion for summary judgment.

**10.** AFRs 36–2, 36–3, § A, ¶ 1.e. Waivers or Exceptions. Waivers of or exceptions to the provisions of this regulation may be authorized or approved only by the Secretary of the Air Force.

received all of the procedural rights and protections afforded by AFR 36–2. Defendant contends that differences between the regulations are minor; that plaintiff had an opportunity to appear before a BOI; that he was represented by counsel; and, that there was adequate information for the AFBCMR reviewing authorities to make a fair and balanced determination in the matter.[11]

Further, defendant asserts the Correction Board concluded that nothing in the record indicates that the BOI abused its discretionary authority or that the BOI's proceedings violated AFR 11–31.[12] Defendant also argues that plaintiff's discharge was not unjust or unwarranted. It argues that the AFBCMR found that the basis for plaintiff's appointment as a commissioned officer was the Air Force's need for Missile Launch Officers. Once plaintiff was terminated from that specialty code, the basis for his appointment was moot. The AFBCMR noted that plaintiff understood prior to his appointment that the needs of the service would determine whether or not he could remain on active duty if he failed to complete relevant training courses.[13]

Finally, defendant contends that with regard to plaintiff's February 1983 OER, the AFBCMR found that the consideration of events which occurred outside of a rating period is not prohibited if they add significant information which has not been previously reported. Additionally, defendant argues that it is not unusual for the addition-

---

**11.** Under AFRs 36–2 and 36–3 the initiating commander forwards a letter of notification to the officer concerned informing him of pending discharge proceedings. The initiating commander then forwards a copy of this letter to the Air Force Manpower and Personnel Center (AFMPC) and to the Major Command. The copy forwarded to the Major Command will include unclassified summaries, investigative reports and other relevant documents. The initiating commander will also forward to the Major Command a copy of the letter of transmittal sent to AFMPC with its copy of the notification. Upon receipt of its notification, AFMPC will screen the officer's master personnel records and forward any pertinent materials to the Major Command for use in evaluating the case.

After receipt of the concerned officer's endorsement to the notification letter, and any comments from the AFMPC, the Major Commander determines whether to initiate action under AFR 36–2 or 36–3.

After these initial procedures are completed, AFRs 36–2 and 36–3 differ. Under AFR 36–3, the Major Commander will refer the case of a probationary officer (an individual with less than three years active duty service as an officer), such as plaintiff, along with his recommendation to Headquarters (HQ) United States Air Force (through the AFMPC). The AFMPC will then refer the case to the Air Force Personnel Board (AFPB or Personnel Board) for its recommendation. The officer does not appear before the AFPB, and is not represented by counsel, unless the Personnel Board determines that the officer's presence, with or without counsel, is necessary. Should the AFPB determine that the officer should be retained on active duty the action initiated against the officer will be dismissed. The Personnel Board can also recommend that the officer not be retained. In such a case it will forward the case with this recommendation to the Secretary. Finally, the Personnel Board can recommend that the case be returned to the Major Commander for consideration by a BOI.

Under AFR 36–2, the case is referred to the AFMPC, and then to the AFPB only if the Major Commander recommends an honorable discharge. Additionally, if an AFR 36–2 case is processed by the AFPB and the Board recommends discharge, then it must also recommend the character of the discharge (honorable, under honorable conditions, general discharge, or under other than honorable conditions).

If the major commander's recommendation is for other than an honorable discharge, then under AFR 36–2, the case is referred to a Selection Board. The Selection Board determines whether or not the allegations are sufficiently serious to require the officer to show cause. The Selection Board has no investigative authority, nor does it examine witnesses. However, it may return a record to the convening authority for further investigation without closing the case. If the officer is not required to show cause, the case is dismissed. However, if the convening authority disagrees with the Selection Board's recommendation, he can forward the case to the AFMPC for further action. If the officer is required to show cause and doesn't apply for retirement or discharge, the case is considered by a BOI. The officer may then waive the BOI, and the case will be processed for consideration, as above, by the AFPB.

**12.** AFR 11–31—Administrative Practices—Boards of Officers—governed plaintiff's BOI proceeding.

**13.** The court will not address this issue since in this context the "needs of the service" were not the basis for plaintiff's discharge. Rather, plaintiff was discharged for substandard performance.

al rater and indorser of an OER not to have personally observed the officer during the rating period.

In response, plaintiff argues that the Secretary's discretionary right under Title 10 U.S.C. to discharge a Reserve Commissioned Officer is tempered by regulations which were enacted under that Title. Additionally, plaintiff alleges that he is attacking the discharge proceedings, rather than the discharge itself. Therefore, this court can review whether plaintiff's discharge was proper.

Plaintiff argues that contrary to the Correction Board's findings, his discharge under AFR 36–3 was null and void because it was accomplished without compliance with the requirements of that regulation. Plaintiff contends the AFBCMR's decision ignored relevant legal authority which holds that the Air Force is bound by its regulations. Plaintiff alleges that the power to "enact regulations does not carry with it the absolute and unrestricted freedom to manipulate those regulations at will or change the entire basis/reason/authority for a discharge action that has already been processed to near-completion." P's. Br. pg. 7. Additionally, plaintiff submits that only reasonable interpretations by an agency of its regulations are entitled to deference by the court.

Plaintiff contends that defendant seeks to minimize plaintiff's damages by portraying its actions as beneficial to plaintiff. In fact, plaintiff alleges that the AFBCMR acted in an arbitrary and capricious manner when it denied plaintiff relief, in part, because it felt plaintiff's AFR 36–3 discharge was less derogatory than one under AFR 36–2. Plaintiff agrees that it was provided with the procedural protections of AFR 36–2. However, plaintiff submits that he was not discharged under that regulation. Plaintiff alleges that contrary to the requirements of AFR 36–3, his case was never referred to Headquarters (HQ) USAF,

the Air Force Manpower and Personnel Center (AFMPC), nor was it considered by the Air Force Personnel Board (AFPB) which could have terminated the show-cause proceedings.[14] Plaintiff claims that the AFBCMR ignored established precedent when it adopted the position that 10 U.S.C. § 8012 gave the Secretary the authority to change the basis for the discharge from AFR 36–2 to AFR 36–3.

Plaintiff also alleges that he was denied due process of law because he was not notified of the basis for his AFR 36–3 discharge. Plaintiff alleges that he was originally told that proceedings had been initiated against him under AFR 36–2 for misconduct in volunteering for missile duty when he entertained reservations against such duty at the time of his application to OTS and when he accepted his commission. Plaintiff was then notified that he must show cause before a Selection Board for retention since his failure to complete IQT was reasonably traced to factors over which he had control. Plaintiff contends that at the BOI the only issue addressed was whether or not he had control over his disqualification from IQT. Plaintiff alleges that he was unaware that his overall proficiency would be the official basis for discharge under AFR 36–3 until it was too late for him to address that issue. He argues that the Secretary's action deprived him of his due process right to respond to the allegations against him. Plaintiff contends that the AFBCMR's conclusion that there was sufficient evidence on the record to make a fair and balanced determination under AFR 36–3 was arbitrary and capricious and in error. Plaintiff alleges that he remains confused about which administrative determination, misconduct or substandard performance, he must refute.

Plaintiff also attacks the AFBCMR's finding. He argues that it was arbitrary and capricious because it ignored the arguments he presented and denied him relief

---

**14.** In its reply brief filed August 22, 1988, defendant argues that these procedures were followed except for a referral to the AFPB. However, from its review of the briefs, the court believes that defendant has confused plaintiff's argument. Plaintiff has alleged that his case was never referred to the HQ, the AFMPC, or the AFPB *in accordance with AFR 36–3, § E, ¶ 16(c)(2)*. Plaintiff is not alleging that his case was never submitted to HQ or the AFMPC under AFRs 36–2 and 36–3, ¶¶ 14.

based upon compliance with another regulation. Plaintiff alleges that the Board did not consider all of the relevant evidence it had before it. He also argues that the Correction Board "never wrote one word about whether the facts supported a finding of substandard performance." Plaintiff argues that the facts do not support a conclusion that he was "guilty" of misconduct under AFR 36–2 or of substandard performance under AFR 36–3. Additionally, plaintiff alleges that the administrative proceedings were a sham because defendant was applying a "secret policy" whereby the Air Force considers an expression of a moral compunction against nuclear missile launch duties to be substandard performance.[15]

Finally, plaintiff argues that the Correction Board acted capriciously and erroneously when it rejected plaintiff's argument that his February 1983 OER should be expunged from his personnel records. Plaintiff alleges that the evidence showed that the challenged OER was defective because it included comments from one individual who admittedly had no personal contact with or knowledge of plaintiff's performance, referred to an incomplete and unsuccessful administrative proceeding, and included comments related to incidents from outside the rating period which had previously been reported in an earlier training report.[16]

*Analysis*

The court will first address whether it has the power to review plaintiff's discharge.

The Congress has provided that:

*Subject to other provisions of this title,* reserve commissioned officers may be discharged at the pleasure of the President.

(Emphasis added.) 10 U.S.C. § 1162(a) (1982).

■ The President can discharge officers at his pleasure if accomplished in accordance with "other provisions" of Title 10. Under 10 U.S.C. § 8012(f) (1982), the Secretary has been delegated the authority to make rules and regulations to operate the Air Force. This provision authorized the promulgation of AFRs 36–2 and 36–3. These, and other regulations created under 10 U.S.C. § 8012(f), modify the Secretary's discretion to discharge at will, reserve commissioned officers. Once regulations are enacted they have the force and effect of law and are binding on the Secretary. *Buchanan v. United States,* 223 Ct.Cl. 291, 621 F.2d 373 (1980). *See also Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *Vitarelli v. Seaton,* 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959).[17] The Air Force then must comply

---

**15.** Plaintiff cites part of a document written by Tidal W. McCoy, Assistant Secretary of the Air Force. This document was prepared to substantiate the Secretary's deviation from a Correction Board's recommendation that relief be granted in another similar case, *Tilley v. United States,* 19 Cl.Ct. 33 (1989). It states:

An officer who asserts the right to pick and choose among lawful orders those which he will or will not obey, however moral his reasons may be, has at the least failed to show acceptable standards of leadership and, as happened to the applicant, he is very likely to disqualify himself from properly training for or discharging his duties. Hence at least since 1963 the Air Force has considered an officer who believes himself unable, for moral reasons, to execute a valid missile launch order, to be subject to discharge under these provisions or their predecessors. In recent years the Air Force has separated an average of about seven missile officers a year as a result of moral compunction.... The record in the applicant's record discloses no impro-

priety in the application of this policy to him; it is "unfair" only to the extent that it is "unfair" to separate any missile officer for moral compunction.

**16.** The additional rater referred to a statement made by plaintiff in May 1982 that he could not, as a missile officer, follow orders that he disagreed with. The indorser referred to plaintiff's qualification of duties during his testimony in November 1982 (the BOI hearing).

**17.** In arguing that the Secretary has the right, notwithstanding regulations enacted under § 8012(f), to indiscriminately discharge reserve commissioned officers, defendant relies upon a number of cases which are easily distinguished from the instant case. These include *Alberico v. United States,* 783 F.2d 1024 (Fed.Cir.1986), and *Sims v. Fox,* 505 F.2d 857 (5th Cir.1974), both of which concerned plaintiffs who were discharged *in accordance with* applicable military regulations. These cases did not represent instances where the Secretaries of the respective

with its own regulations. Thus, this court may determine whether an entitlement was properly terminated in accordance with applicable regulations, and by virtue of 37 U.S.C. § 204 [18] and 28 U.S.C. § 1491. *Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804 (1979).

In a related issue the court must address defendant's argument that this court cannot review the exercise of discretion to terminate plaintiff's commission for substandard performance. Defendant's argument misconstrues plaintiff's claim. Plaintiff is attacking the nature of the administrative proceedings which resulted in his discharge, and not the *decision* to discharge for substandard performance. This court can inquire into the procedural aspects of plaintiff's discharge even though it cannot substitute its judgment for that of the Air Force in *evaluating* plaintiff's performance. *Sargisson v. United States*, 913 F.2d 918 (Fed.Cir.1990); *Voge v. United States*, 844 F.2d 776 (Fed.Cir.1988). "[D]ischarge proceedings are reviewable when challenged on the basis that regulations have been violated." *Cohn v. United States*, 15 Cl.Ct. 778, 789 (1988).

Next the court will proceed to the merits of plaintiff's case. The first such issue is whether, by virtue of Section A, ¶¶ 1.e. of both AFRs 36–2 and 36–3 the AFBCMR, acting through the Secretary, impermissibly waived or misapplied the requirements of those regulations in affirming the discharge of plaintiff under AFR 36–3 for substandard performance.

While the Secretary clearly has some leeway under AFRs 36–2, 36–3, ¶¶ 1.e., to make minor exceptions or exemptions from applicable Air Force regulations, the court cannot logically read that paragraph as permitting the Secretary to determine that all of the definitive protective procedures in

AFR 36–3 had been adequately met when reviewing officials processed plaintiff's discharge under the procedures established by an entirely separate and distinct regulation, AFR 36–2. "It is elementary that an agency must follow its own regulations, and that a discharge brought about in violation of those regulations is invalid and cannot stand." *Cruz–Casado v. United States*, 213 Ct.Cl. 498, 502–03, 553 F.2d 672, 675 (1977). *See also Service v. Dulles*, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *Bray v. United States*, 207 Ct.Cl. 60, 515 F.2d 1383 (1975).

If defendant's argument is accepted, the Secretary would have the unfettered discretion to pick and choose among various pertinent regulations, and in so doing, completely ignore regulations which reviewing officials fully relied upon in processing an officer's discharge. Moreover, simply by adding an exculpatory clause to a given regulation, the Secretary could elect to waive the definitive procedures set forth in that regulation. Such an interpretation is not reasonable because it would emasculate the procedural protections inherent in each regulation, an illogical result which is not entitled to any deference whatsoever by this court. Accordingly, the court concludes that Section A, ¶¶ 1.e., in AFRs 36–2 and 36–3 does not give the Secretary the discretion to unilaterally waive the definitive procedures set forth in one discharge regulation—which were carefully followed and relied upon by both reviewing authorities and the plaintiff—for those in another distinct and independent regulation having different procedures.

A second and related issue is whether there were material differences in the procedures of AFRs 36–2 and 36–3 which significantly prejudiced plaintiff's rights

Services ignored their own regulations in exercising the discretion to discharge personnel. Defendant's reliance on *Abruzzo v. United States*, 206 Ct.Cl. 731, 513 F.2d 608 (1975), is also misplaced. In that case plaintiff alleged that the Marine Corps' failure to process a requested transfer to the Air Force rendered null and void his involuntary release from active duty after he was twice non-selected for promotion. Plaintiff argued that he had a right to

remain on active duty until that request was properly processed. That case did not concern plaintiff's release from active duty in contravention of applicable Service regulations.

**18.** 37 U.S.C. § 204 entitles an officer to the "right of pay of the rank he was appointed to up until he is properly separated from the service."

under applicable laws and regulations. The court agrees with defendant that most of the differences between the procedural aspects of these regulations, on the surface, appear to be minor. In fact, as defendant alleges in one instance, the procedures followed under AFR 36–2 prior to plaintiff's discharge under AFR 36–3 arguably may have provided a benefit to plaintiff.[19] However, as the Federal Circuit stressed in *Hanratty v. Federal Aviation Admin.*, 780 F.2d 33, 35 (Fed.Cir.1985), "To argue, ... that the main distinction between the two chapters ... favors Hanratty, and that therefore the Board's holding here should be affirmed, is to miss the point."

In *Hanratty v. Federal Aviation Admin.*, 780 F.2d 33 (Fed.Cir.1985), the court considered an appeal from a Merit Systems Protection Board (MSPB) decision sustaining Hanratty's removal from the Federal Aviation Administration (FAA) under 5 U.S.C. § 7513 for unacceptable performance. Hanratty's removal could have been accomplished under either 5 U.S.C. § 7513 or 5 U.S.C. § 4303. His removal notice made no reference to which Section the removal proceedings would be based upon. During the hearing the presiding official repeatedly characterized the proceedings as under § 4303 and distinguished cases offered by appellant because they were based on § 7513. Four weeks after the hearing the presiding official entered his decision basing appellant's removal on § 7513 and not § 4303.

The Federal Circuit held that the presiding official erred by recharacterizing, *sua sponte*, the removal action. "The Board may not simply substitute Chapter 75 for Chapter 43 or vice versa after the parties

have presented their evidence. Whether doing so would favor the petitioner or the agency cannot be controlling, after-the-fact switches being inherently unfair and governing considerations under the two chapters being distinct." *Hanratty v. Federal Aviation Admin.*, 780 F.2d 33, 35 (Fed.Cir. 1985).

*Hanratty* is dispositive of this issue in this case. Here, discharge proceedings for misconduct were initiated and conducted pursuant to AFR 36–2. However, in his final decision, the Secretary, like the presiding official in *Hanratty*, based plaintiff's discharge on a different regulation, AFR 36–3. Because plaintiff has had no opportunity to rebut a charge of substandard performance under AFR 36–3, the court cannot accept the Secretary's inherently unfair decision.[20]

Moreover, the regulations themselves stress the importance of initiating discharge proceedings under the proper regulation.

AFR 36–2, § B, ¶ 12. Commander's Responsibilities: [21]

a. Evaluation of Information. Each commander will examine and evaluate any information received indicating that an officer under his or her jurisdiction should be considered for action under this regulation or under AFR 36–3. *When a commander receives information which indicates that the reasons listed in both this regulation and AFR 36–3 are applicable in a case, the commander must weigh all the facts and circumstances and exercise extreme care and good judgment in evaluating all available evidence and documents*

---

19. If defendant had followed the procedures set forth in AFR 36–3 in discharging plaintiff, rather than those under AFR 36–2, plaintiff's case would have been reviewed by the AFPB. The AFPB could have recommended plaintiff's discharge which the Secretary could have approved without plaintiff having had the opportunity to appear and contest the discharge proceedings. Under the AFR 36–2 procedures followed by defendant, plaintiff's case was referred to a Selection Board. The Selection Board did not have the power to refer plaintiff's case directly to the Secretary with a recommendation for discharge. While like the AFPB, it could

dismiss the charges against plaintiff, if it recommended discharge, plaintiff would have had the right to appear before a BOI.

20. While *Hanratty* concerned a civilian as opposed to a military discharge, that distinction is immaterial. *Hanratty* is consistent with prior case law, concerning both military and civilian proceedings, which hold that the Government must comply with its own regulations.

21. A similar provision exists in AFR 36–3, § B, ¶ 12.

*to ensure that action is initiated under the proper regulation....*

(Emphasis added.)

This provision serves as clear notice that the two regulations are not willy-nilly interchangeable, and that it is extremely important for Air Force officials to initiate and prosecute a discharge under the proper regulation.

It is inescapable that the mere *similarity* of procedures established by these two regulations is *not* controlling and that under the precedent of *Hanratty v. Federal Aviation Admin.*, 780 F.2d 33, 35 (Fed.Cir. 1985), the procedural differences are quite material and may not be ignored. The court therefore concludes that the Correction Board grievously erred in affirming the transformation of plaintiff's discharge from one for misconduct under AFR 36–2, to one for substandard performance under AFR 36–3.

▪ The third issue presented is whether plaintiff's due process rights were violated because of lack of adequate notice and lack of an opportunity to mount a defense against the charge of substandard performance set forth in AFR 36–3. Plaintiff professes confusion as to exactly what charges formed the basis for plaintiff's dismissal. Plaintiff's notification of initiation of action, dated July 17, 1982, stated that discharge procedures under AFR 36–2 had been initiated due to his elimination from IQT for factors "under plaintiff's control." Particularly, it was directed toward his statement that he would refuse to execute a validly authenticated order to launch nuclear weapons. At the BOI, Col. Horton testified that he initiated the proceedings under AFR 36–2 because plaintiff had eliminated himself from a Government funded course of instruction through factors over which he had control. Plaintiff maintains that his evidence at the BOI was accordingly addressed solely to the issue of whether he had control over his disqualification.

In defendant's response to plaintiff's cross-motion for summary judgment and reply to plaintiff's opposition to defendant's motion for summary judgment, defendant cited the reasons for plaintiff's discharge as follows:

Discharging the plaintiff for substandard performance under AFR 36–3 was an ameliorative action on his part, as discharge under AFR 36–2 would have made the plaintiff ineligible to enlist in the Air Force.

Substandard performance of duty encompasses several different areas under AFR 36–3, including:

a. "Failure to demonstrate acceptable qualities of leadership required by an officer of his or her grade." AFR 36–3, ¶ 4(a); and

b. "Failure (including lack of ability) to properly discharge assignments commensurate with grade and experience." AFR 36–3, ¶ 4(c).

Lt. Gifford's statements that he could not carry out a launch order due to national policy conflicting with his own beliefs definitely indicated a *professed unwillingness to discharge the assignments of a missile officer.* Further, *his attitude* does not demonstrate the qualities of leadership expected of an officer.

(Emphasis added.)

Plaintiff alleges, and the court agrees, that this statement is in effect a clear concession from defendant that plaintiff was discharged, not because he was evidencing an intent to "pick and choose" among valid orders, but solely because of his *compelled* statement of moral concern. This moral concern was seen by the Air Force as proof of substandard performance of duty under AFR 36–3. Now, in its supplemental brief defendant alleges that the principle issue is the Secretary's characterization of plaintiff's failure to complete a training course due to his refusal on moral grounds, and failure to comply with lawful military orders, as unsatisfactory duty performance.

It is clear that at the BOI plaintiff presented evidence solely related to the issue of whether his failure to complete a training course was due to factors within his control. Plaintiff's evidence at the BOI was directed toward proving that the *mor-*

*al* ramifications of defendant's nuclear policy left him no choice but to express—as the regulations compelled him to do—his unwillingness to launch nuclear weapons against purely civilian targets. The evidence he presented concerned the issue of whether or not he had control over the events that led to his failure to complete IQT. This testimony related to his moral character, the genuineness of his emotional reaction, and arguments about why he considered the possibility of preemptive nuclear attacks on civilian targets to be immoral. *The BOI clearly never addressed the issue of substandard performance for which plaintiff was ultimately discharged.* Nor did it discuss whether or not plaintiff's compliance with AFR 35–99 in alerting his superiors to his inability to "turn the key" was substandard performance.[22]

Because the grounds for discharge were not the same for the proceedings under AFRs 36–2 and 36–3, it is inescapable that the initial notification of proceedings did not provide plaintiff with adequate notice. *Kochanny v. Bureau of Alcohol, Tobacco and Firearms*, 694 F.2d 698 (Fed.Cir.1982); *Hanratty v. Federal Aviation Admin.*, 780 F.2d 33 (Fed.Cir.1985); *Snakenberg v. United States*, 15 Cl.Ct. 809 (1988). Therefore, the court concludes, that plaintiff was denied due process when he was not apprised of and, therefore, was unable to defend against, the ultimate basis for his dismissal.

■ Finally, the court will consider whether the AFBCMR considered all of the relevant evidence it had before it. Clearly, the Correction Board failed to consider whether plaintiff's discharge violated AFR 35–99.[23] This is the very issue addressed in *Tilley v. United States*, 19 Cl.Ct. 33 (1989). That case is dispositive and controlling of this issue.[24]

**22.** This is the only evidence that defendant can legitimately use to substantiate its claim of plaintiff's substandard performance. An earlier issue was addressed in the BOI concerning plaintiff's entirely subjective motivation in accepting an appointment and taking the actions which led to his elimination from training. However, in the Correction Board's Record of Proceeding, it concluded that this issue was resolved in the applicant's favor when the proceedings for misconduct were terminated.

**23.** In pages 20–21 of plaintiff's Brief of Counsel, attached to its June 8, 1986 Application for Correction of Military or Naval Record, DD–149, plaintiff discussed the application of AFR 35–99 to his discharge proceeding:

[T]he applicant was discharged for doing precisely what was expected of him under PRP. That program is designed to insure that servicemembers who work with or around nuclear weapons meet "the highest possible standards of individual reliability." ¶ 1–1, AFR 35–99 (14 April 1981). An individual not meeting that standard is ineligible for specified career fields. *In order for this critically important program to work, however, servicemembers must feel free to volunteer any information which might have a negative impact on their reliability. Recognizing this need for openness and honesty, therefore, that regulation de-stigmatizes PRP decertification by providing that it is not to be considered an adverse personnel action.* (Emphasis added.)

**24.** As evidenced by a transcript of proceedings filed January 9, 1991, defendant's counsel reiterated during a formal status conference the terms of a prior agreement made with this court

and plaintiff that this case would be controlled by and, therefore, should be settled based upon a final decision in *Tilley v. United States*, 19 Cl.Ct. 33 (1989). At the time of the agreement *Tilley* was pending before this court. In accordance with that agreement this court suspended proceedings in this case by a stay order dated December 15, 1989, which remained in effect for over nine months.

After this court issued its opinion and final judgment in plaintiff's favor in *Tilley*, defendant, for whatever reasons, failed to appeal that decision. At no time during the period of the stay or during the time for an appeal in *Tilley*, did defendant's counsel indicate to opposing counsel or to this court that its position had changed with regard to the controlling nature of *Tilley*. This court was first made aware that this change had occurred when defendant sought leave to file a supplemental brief in this case attempting to distinguish *Tilley* but failing to even mention the described agreement. Although the court accepted defendant's supplemental brief it also allowed plaintiff to file a responsive brief. Thereafter, on December 18, 1990, the court held a status conference at which time defendant's counsel specifically repudiated the agreement. Although defendant's counsel stated that he still personally felt that *Tilley was* controlling and, therefore, dispositive of the issue regarding application of AFR 35–99 to this case, the *Air Forces'* new position was that *Tilley* was distinguishable and since the Air Force was his client, he was bound by its determination to reject settlement of this case on the basis of *Tilley*. Thus, impliedly, defendant's counsel has served notice that defendant will

In summary, it may be noted that AFR 35–99, ¶ 2–5, requires individuals assigned to PRP duties to monitor their own reliability for missile duty. Each individual "must advise supervisors of all factors (including medical or dental care) that could have an adverse impact on their performance and safety." AFR 35–99, ¶ 2–5. Such action is *required* even though it may adversely affect that individual by resulting in their suspension, temporary decertification or permanent decertification from PRP duties. AFR 35–99, ¶ 5–10 concerns the disposition of permanently decertified personnel, such as both Tilley and plaintiff:

a. Restrictions on Disposition:

(1) *Punitive action is not to be taken against personnel solely because of their failure to qualify or to remain qualified under this program. The member's record will not contain any adverse comments based solely on the decertification.*

(2) The cause for permanent decertification may also require other administrative or punitive action. *Decertification is not to be used to justify,* or to avoid, appropriate proceedings under the UCMJ or other existing directives governing *administrative processing or separation.*

\* \* \* \* \* \*

(4) Members permanently decertified because of substandard *conduct* or diagnosis of character and behavior disorder should be considered for separation under governing directives.

\* \* \* \* \* \*

b. Reassignment and Retraining:

A member permanently decertified from PRP duty may be an effective worker in another duty assignment where the conditions of stress are not as great, or the nature of the duty not so critical. *When it is impractical or impossible to effectively utilize the individual in non-PRP duties within his or her AFSC, the individual must be promptly retrained into a new AFSC where he or she can be assigned to duty not covered by this regulation.*

(Emphasis added.) AFR 35–99, ¶ 5–10.

In *Tilley,* the court addressed the issue of whether or not the Air Force could ignore AFR 35–99 and discharge an officer solely for statements of moral reservation related to the United States' nuclear weapons policy. The court incorporates that opinion by reference.

There are few distinguishing characteristics between the plaintiff in *Tilley* and plaintiff in the present case. Both officers had consistently performed in a superior manner prior to their decertification. Plaintiff continued to do so during the period of time he was assigned to Grand Forks AFB, as well as during his subsequent reenlistment as a noncommissioned officer. The sole basis for each plaintiff's discharge was his statements regarding the United States' nuclear weapons policy.[25]

Defendant attempts to distinguish the two cases by arguing that Gifford's discharge was not based upon his decertification. "[N]o language referencing decertification appears in the Statement of Reasons for his discharge." D's. Br. pg. 2. Additionally, it argues that "but for a brief period of concern about the United States' nuclear weapons policy, based upon a mistaken understanding of that policy, he [Tilley] was always ready to execute a properly authenticated launch order."[26] D's. Br.

---

seek to appeal this court's ruling, if made in plaintiff's favor, to the United States Court of Appeals for the Federal Circuit.

The court understands defendant's counsel's position in essence, to be that in the case at bar the Air Force may impose its determination as to the precedential effect of *Tilley* upon the Department of Justice and that he, although still counsel of record, must repudiate his prior agreement. The complete colloquy regarding this matter is in the transcript of the status conference. (Transcript of Proceedings, filed January 9, 1991, pages 2 through 6.) It is now apparent to this court that defendant's counsel of record cannot bind defendant to any agreements made with the plaintiff and the court unless specifically approved by agency counsel. Unfortunately, this detailed written opinion has been made necessary only because of the defendant's repudiation of its agreement.

**25.** See Footnote 22.

**26.** After an Emergency War Order briefing which purpose was to educate plaintiff about the United States' nuclear weapon policy, Tilley

pg. 2. In contrast, without any basis in fact in this record, defendant argues, "plaintiff refused to perform the full range of military duties." D's. Br. pg. 2.

Defendant's arguments are without merit. The only behavior defendant can point to in substantiation of plaintiff's discharge, is the same type of behavior which was the basis for plaintiff's discharge in *Tilley*—statements of moral compunction regarding an inability to comply with an authenticated launch order. In light of this court's decision in *Tilley*, while "such a statement ... may and perhaps should cause decertification under AFR 35–99, ... at the least it must also result in reassignment or retraining under AFR 35–99." *Tilley v. United States*, 19 Cl.Ct. 33 (1989). The Air Force cannot continue to represent in AFR 35–99 that decertification for a compelled statement of moral compunction will not necessarily result in adverse action against an officer, when in actuality, it considers such behavior alone as a sufficient basis for discharge proceedings (see footnote 15).

Clearly, in light of the court's findings, the AFBCMR acted arbitrarily and capriciously when it erroneously concluded that it was permissible to ignore a pertinent regulation, AFR 35–99, and to substitute the procedures in one regulation for those in another without notice to plaintiff, when those procedures granted the concerned officer different rights and contained separate and distinct bases for discharge.

■ The final issue raised by the parties relates to plaintiff's disputed OER. The court agrees with the AFBCMR that AFR 36–10 [27] does not absolutely prohibit including in an OER, evaluations based upon incidences from outside of the rating period, or from other than personal observation.

> As a rule, don't allow incidents that *occurred outside the reporting period to influence the report.* If an incident that occurred before the reporting period comes to your attention, *you may include it in the report if it adds significant information that has not previously been reported.* (Emphasis added.) AFR 36–10, ¶ 1–5.

> Purposeful observation must form the basis of evaluations and include direct observation of the officer's behavior and performance of duty.... *Sometimes, however, only the results of the officer's work or facts obtained from other sources are available.* (Emphasis added.) AFR 36–10, ¶ 1–4.

■ Nor does the court believe that the mere mention in a training report of an incident,[28] where the report does not fully relate the effect of such incident on an officer's judgment, leadership, or other pro-

---

indicated that he could respond to a valid launch order. However, he was still recommended for decertification because of the assumption that he would require personal knowledge of the circumstances of a strike before he could execute a launch order.

**27.** AFR 36–10, Chapter 1, The Rating Process. This regulation states that the objective of officer evaluations is to "provide the Air Force with information on the performance and potential of officers for use in making personnel management decisions, such as promotions.... It also is intended to provide individual officers information on their performance and potential...."

**28.** A training report was prepared for February 23, 1982 through August 5, 1982 which included a statement that the applicant had been removed from training "due to stated moral observations concerning performance of missile crew duty." The report did not include any other comment on or evaluation of plaintiff's per-

formance. In an advisory opinion issued March 25, 1987 to the HQ AFMPC, Col. Kenneth Joyce, Staff Judge Advocate, USAF, indicated that this training report did not relate the applicant's removal from training to any evaluation of his judgment, leadership, adaptability to stress, or professional qualities. He argued that under these circumstances it was "appropriate for the additional rater and the endorser to consider that information in evaluating the applicant's potential for advancement and continued service in the Air Force."

Col. Joyce additionally argued that none of these comments referred to the incomplete administrative action and that Air Force regulations recognize that a rater or endorser may not always be able to personally observe the individual being rated. He argued that in this case, both the endorser and the additional rater had knowledge of the plaintiff's position regarding carrying out orders as a missile officer and used this information to evaluate his potential for advancement.

fessional qualities, precludes consideration of this incident in a subsequent OER where said OER is the first opportunity to relate such incident to these characteristics.[29]

However, AFR 36–10, ¶ 3–14a also *cautions raters not to consider or refer to:*

Charges preferred, investigations, reviews by boards of evaluation or inquiry, or any similar *actions related to the officer that are not complete as of the closeout date, or information obtained solely through such incomplete actions.* Facts obtained from other sources, such as personal knowledge or observation, may be included. (Emphasis added.)

Plaintiff alleges that the February 1983 OER included comments which referred to an incomplete administrative proceeding. The AFBCMR, in its October 21, 1987 Record of Proceedings, somewhat touched on this issue when it stated on page 3 of its decision that "[W]hile the indorser [Col. McAndrews] referred [in the OER] to testimony given on 4 November 1982 [at the BOI hearing], this testimony does not appear to be the sole source for his observations." [30] However, the only source the court could identify for Col. McAndrews' observations, other than the BOI transcripts, was stated in his testimony before the BOI. When Col. McAndrews was asked on direct examination "[h]ave you had a chance to talk with Lieutenant Gifford or what do you know about the evidence in this case ..." he responded, "No I have not talked with Lieutenant Gifford.... My knowledge of the case was derived from a review of the file and all of the correspondence, of course, that transpired between his [plaintiff's] immediate commander [Lt. Col Nelson] and Col. Horton." [31] It appears likely, based upon this statement, that Col. McAndrews may have impermissibly considered these materials related to the on-going investigation in violation of AFR 36–10, ¶ 3–14a, when evaluating plaintiff for his February 1983 OER. This conclusion is particularly evidenced by his reference therein to the BOI testimony. In any event, his comment referring to that testimony alone, regardless of the source for his other comments, would appear to violate that regulation.

Rather than make a determination of the validity of Col. McAndrews' comments itself, the court has determined to remand this issue to the AFBCMR pursuant to RUSCC 60.1(a)(1). In addition to addressing the issue discussed above, with regard to the statements of the additional rater, Lt. Col. Nelson, the court strongly encourages the Correction Board to carefully review AFR 35–99, ¶ 5–10; AFR 35–99, cited above, which states that a member's *record* will not contain any adverse comments based solely on decertification.[32] While AFR 36–10 may permit comments in an OER related to the behavior which resulted in plaintiff's decertification, it appears to this court that AFR 35–99 may prohibit them.

## CONCLUSION

In summary, this court finds that it has jurisdiction to review the procedural

29. Whether, as in the instant case, including comments concerning plaintiff's decertification in the February 1983 OER or other record is permissible under AFR 35–99 is discussed later in this opinion.

30. The following were Col. MacAndrews' comments in plaintiff's February 5, 1983 OER:

I have reviewed Lt. Gifford's rebuttal to this referral report and concur with the additional rater. I have personal knowledge of the factors affecting his performance during the period of this report, including his qualification of duties during testimony on 4 Nov 82. I conclude that his future service in the United States Air Force in any capacity is untenable. Do not under any circumstances promote or retain this officer.

31. The only indication of the contents of this file is from a question put to Col. McAndrews by the Government on direct examination:

Q: Recognizing and after having read the file and knowing somewhat about Lieutenant Gifford's good background in the Air Force, what place is there for Lieutenant Gifford in the missile field or in the Air Force in general as an officer?
A: The Air Force in general. For an officer that will not perform those jobs assigned, in my opinion no place in the Air Force.

It is very interesting to note that Col. McAndrews' comments in the disputed OER (see footnote 29) are very similar in content to comments made in his testimony before the BOI.

32. See Footnote 16.

aspects of an AFBCMR final decision. Further, the court finds that even when viewed in a light most favorable to defendant, and with the degree of deference to be accorded decisions of military boards, the AFBCMR's decision to uphold plaintiff's discharge was arbitrary, capricious and contrary to law in that it was made in disregard of legal precedent and relevant AFR regulations, and it violated plaintiff's right to due process. Moreover, plaintiff's discharge was in contravention of AFR 35–99. Finally, plaintiff has shown that the AFBCMR failed to adequately consider AFR 36–10, ¶ 3–14a when it upheld plaintiff's disputed OER. Accordingly, defendant's motion to dismiss or in the alternative for summary judgment is denied, and plaintiff's cross-motion for summary judgment is granted in part. However, the court will defer its ruling upon the issue of the validity of plaintiff's disputed OER. Accordingly, that issue is remanded to the AFBCMR for a reexamination and more definitive determination under applicable regulations.

IT IS ORDERED, as follows:

1. Pursuant to RUSCC 60.1(a)(1), the issue of the validity of plaintiff's February 1983 OER is remanded to the AFBCMR.

2. In light of this courts' findings the Correction Board shall review the evidence with regard to AFRs 35–99 and 36–10 to determine if the ratings and comments of the additional rater and the indorser violated those regulations.

3. The court's ruling upon the parties' cross-motions for summary judgment as to this issue is deferred to permit the AFBCMR's reexamination and determination of this issue.

4. Proceedings in this court are stayed until September 30, 1991, by which time the AFBCMR shall issue and transmit its decision to the Clerk of the Court pursuant to RUSCC 60.1(b)(3).

5. Any notice pursuant to RUSCC 60.-1(b)(4) shall be filed by October 31, 1991.