Skelton, Judge,
delivered the opinion of the court:
The plaintiff, Stephen J. Borys, is a former captain in the U.S. Army. He has filed this suit to recover:
1. Retirement benefits based upon alleged active duty service of 20 years and 10 days;
2. Pay and allowances for the period from June 25, 1963, through June 19, 1964, while he was incarcerated in jail by civil authorities in Georgia and South Carolina charged with various civil crimes; and
3. An amount equal to the bachelor allowance for quarters from June 19, 1964, to October 1, 1969, during the time he was restricted to military quarters pending and during two court-martial trials and while confined to Fort Leavenworth Disciplinary Barracks under court-martial order.
*601 The case is before us on cross motions for summary judgment. We have concluded that the plaintiff is not entitled to recover.
The parties have filed an agreed statement of facts as follows:
Plaintiff is a former officer of the United States Army. Plaintiff enlisted in the Regular Army on March 21, 1949, and was commissioned as a Second Lieutenant upon graduation from 'OCS on September 23, 1949. On October 17, 1952, plaintiff accepted an appointment in the Regular Army as a Second Lieutenant, was promoted to First Lieutenant on December 30, 1952, and to Captain, Regular Army, on December 14, 1956.
On June 24, 1963, plaintiff was notified that a Regular Army promotion selection board, convened to consider Regular Army captains for permanent promotion to the grade of major, had not selected him and that as a result thereof he had become a “deferred officer” within the meaning of 10 U.S.C. §3303. Under the provisions of 10 U.S.C. § 3303(c), plaintiff’s name was required to be considered by the next selection board.
On June 25, 1963, while stationed at Fort Gordon, Georgia, and on an ordinary leave of absence, plaintiff was arrested by civilian police authorities in Richmond County, Georgia, and charged with various civilian crimes. Plaintiff was incarcerated in Georgia until July 26,1963, when he was removed to the State of South Carolina, where he was charged with various civilian crimes and again incarcerated. On January 30, 1964, plaintiff was acquitted of certain of such crimes after a second jury trial in Aiken County, South Carolina. On June 19,1964, plaintiff was released from the custody of the State of South Carolina and returned to military control at Fort Gordon, Georgia, his regularly assigned military post. On June 22, 1964, plaintiff was restricted to certain areas of Fort Gordon, pending an investigation under Article 32 of the Uniform Code of Military Justice. Prior to the just described events commencing June 25, 1963, plaintiff was entitled to an allowance of $105.00 a month for quarters, known as “Bachelor Allowance for Quarters”.
Flagging action was initiated on plaintiff on June 25, 1963, pursuant to the provisions of § III, AR 600-31, to preclude favorable personnel actions pending investigation of charges by military authorities for alleged violations of the Uniform Code of Military Justice. Plaintiff’s *602 records were presented to a Eegular Army promotion selection board convened on February 6,1964, and plaintiff was notified, by letter dated March 2, 1964, that he had been non-selected for the grade of major for the second time. This being plaintiff’s second non-selection, plaintiff became subject to the provisions of 10 TJ.S.C. § 3308(d), which required his discharge (as he was not eligible for retirement) no later than the first day of the seventh calendar month after the report of the selection board was approved. Plaintiff was notified by letter dated July 20, 1964, that he would be honorably discharged on January 1, 1965, with 15 years, 3 months, 9 days’ creditable service. On August 10, 1964, plaintiff protested the placement of his records before the promotion board as they were subject to flagging action.
Plaintiff was not discharged on January 1, 1965, as prior to that date nine charges, including three capital charges and thirty-two specifications, were referred to a general court-martial whose action took precedence over plaintiff’s mandatory discharge under 10 TJ.S.C. § 3303. On October 19,1964, a general court-martial was convened for the purpose of trying plaintiff for alleged violations of the Uniform Code of Military Justice. On January 23, 1965, plaintiff was convicted and sentenced to be dismissed from the service, to forfeit all pay and allowances, and to be confined at hard labor for 60 years. On February 5, 1965, plaintiff was transferred to the United States Army Disciplinary Barracks at Fort Leavenworth, Kansas, for the purpose of serving his sentence. Plis case was reviewed by a Board of Review which, on April 12, 1966, set aside the findings and sentence and ordered a rehearing. On May 19; 1966, plaintiff was transferred to Fort Cordon, Georgia, and confined there. On July 25, 1966, a second court-martial was convened and, on August 2,1966, plaintiff was again found guilty, and the same sentence imposed. On August 3,1966, plaintiff was returned to Fort Leavenworth to serve such sentence. On July 12,1968, a Board of Review affirmed plaintiff’s conviction, but reduced the confinement to 30 years at hard labor.
On September 5, 1969, the United States Court of Military Appeals reversed plaintiff’s conviction and ordered all military charges against him dismissed. The court’s decision, found at 18 U.S.C.M.A. 547, 40 CMR 259 (1969), was based upon the ground that the court-martial lacked jurisdiction over civilian crimes. On September 22, 1969, the Department of the Army ordered plaintiff returned to active duty with restoration *603 of all rights, privileges and property of which lie had been deprived as a result of the previous conviction. On that date, plaintiff was released from the United States Army Disciplinary Barracks, Fort Leavenworth, Kansas, and assigned to duty at Fort Sheridan, Illinois. During the period of his confinement at Fort Leavenworth, plaintiff was charged a surcharge for every meal he consumed.
On September 23, 1969, plaintiff was notified by the Army of his pending discharge from the Regular Army under the authority of 10 U.S.C. § 3303, and that he would receive severance pay computed on the basis of 15 years, 3 months, 9 days’ service, together with all pay and allowances of which he had been deprived as a result of the court-martial sentence.
On October 1,1969, plaintiff was honorably discharged from the Army and his service was computed as follows:

(.Yrs.)

Net Service This Period_ 15
Other Service_ 4
Total___ 20
Total Active Service_ 15
The Army designated 4 years, 8 months and 21 days of plaintiff’s civilian and military confinement as “other service” and excluded same from the computation of total services creditable to plaintiff. Upon discharge, plaintiff was paid for 60 days of accrued leave. By letter dated October 1, 1969, plaintiff notified the Army of his objection to his discharge action and the computation of his creditable service for retirement.
On December 12,1969, plaintiff applied to the United States Army Board for the Correction of Military Records for the correction of his records to reflect a total of 20 years, 0 months, 10 days’ service, on the basis of continuous active service from March 21, 1949 to October 1, 1969; alleged entitlement to back pay and allowances for the period June 25, 1963 to June 19, 1964, during which time he was absent in the hands of civil authorities and which absence the Army has consistently refused to excuse as unavoidable; and reimbursement for denied leave. On September 9, 1970, such Board denied plaintiff’s application. Plaintiff filed his petition in the Court of Claims on May 4,1971.
The plaintiff contends that it was error for the Army to present his records to a Regular Army Promotion Selection Board at a time when his records had been “flagged.” 'He says *604 such action kept him from being promoted to major. He had been passed over for promotion the first time on June 24, 1963. This action caused him to become a “deferred officer” within the meaning of 10 U.S.C. § 3303. This statute required his name to be submitted to the next selection board. The plaintiff was arrested by civilian authorities on June 25,1963, and flagging action was initiated on his records by defendant in accordance with Army Regulation (AR) 600-31. Flagging action is defined in this regulation as “action initiated and maintained to preclude favorable personnel actions,” which includes promotions. It is the policy of the Army to allow a flagged officer to be considered for promotion. This is governed by what is known as Deputy Chief of Staff for Personnel Policy Book — Promotion Rank and Procedure (DCSPER). Section IV of the DCSPER Policy Book states what information is furnished to selection boards and the information that is not furnished to them. In short, the “flag” is not an item that is furnished to the promotion selection board. Consequently, when the selection board considered plaintiff’s records in 1964, it did not know of the flagging action and gave him the same consideration it gave other officers who were considered for promotion by the board. As a matter of fact, had plaintiff not been considered for promotion by this board in 1964, he would never have had another chance to be considered, because the promotion system of the Army requires him to be considered with Ms peers. If this is not done, the next selection board would consider a different and younger group of officers and the plaintiff would not be among them. Each year the procedure is repeated. The only function of the flagging action is to hold up the promotion of an officer, if he is selected for promotion by the board, until the cause of the flag is removed. Thus, the flag does not keep an officer from being selected for promotion by the board, as the board has no knowledge of the existence of the flag.
The plaintiff was passed over for promotion to major the second time by the selection board on February 6, 1964. Accordingly, 10 U.S.C. § 3303(d) required him to be discharged no later than the first day of the seventh calendar month after the report of the selection board was approved. *605 The plaintiff was notified by letter dated July 20,1964, that he would be honorably discharged on January 1, 1965, with 15 years, 3 months and 9 days creditable service.
We find no error in the foregoing proceedings in which the plaintiff was considered for promotion. The Army would have been required to have discharged him on January 1, 1965, had jurisdiction for court-martial proceedings against him not attached prior to that date.
The plaintiff contends that he should be paid active duty pay and allowances by the government during the time he was incarcerated by civil authorities in Georgia and South Carolina on criminal charges from June 25, 1963, through June 19,1964, and that such time should be counted toward retirement. Unless his absence is excused as unavoidable, his claim for active duty pay and allowances during this period is directly contrary to 37 U.S.C. § 503, which provides:
§ 503. Absence without leave or over leave.
(a) A member of the Army, * * *, who is absent without leave or over leave, forfeits all pay and allowances for the period of that absence, unless it is excused as unavoidable.
The plaintiff requested the Army to excuse his absence during this period as unavoidable on four different occasions and his requests were refused on the following dates: March 22, 1965; May 22, 1967; April 9, 1969; and September 30, 1969. In its last denial on September 30, 1969, the Army stated:
1. On three previous occasions this headquarters has considered and denied your request to have your absence, while in confinement by the State of South Carolina from 25 June 1963 until 19 June 1964, declared unavoidable.
2. The predicate for excusing an absence as unavoidable is the absence of misconduct, not a lack of criminal accountability. The record in your case is laden with plentiful evidence to support the conclusion that the absence was, in fact, due to your own misconduct. Considering all of the facts and circumstances surrounding your absence from duty during that period, the inescapable conclusion is that your absence was the direct result of your own misconduct, and therefore that absence will not be excused as 'unavoidable.
*606 These refusals by the Army to excuse the absence of the plaintiff as unavoidable is in complete accord with Army Regulation 37-104, Section 12122, which provides:
SECTION C — ABSENCE IN THE HANDS OF CIVIL AUTHORITIES $ ‡ ‡ ‡
12122. Confined Because of 'Civil Offense, a. Oonfned by Givil Authorities. A member who is charged with a civil offense and confined by civil authorities is in unauthorized absence (except for the part of the period covered by authorized leave). He is entitled to pay and allowances for the period of confinement only if his commander excuses the absence as unavoidable after results of the trial are known. Pay and allowances are not authorized unless so excused, regardless of the outcome of the civil proceedings. * * *
Also, “Section B — Unauthorized Absence,” Section 12112, of AR 37-104 provides in pertinent part:
* * * However, before an unauthorized absence legally may be excused as unavoidable under the statute, that absence not only must be unavoidable so far as the member is concerned but also must be unavoidable so far as the Government is concerned. * * *
The plaintiff argues that because he was tried and acquitted on two charges in South Carolina that the Army was required to excuse his absence as unavoidable. We do not agree. AR 37-104, Section 12124 provides that if a member is 'tried and acquitted, such circumstance is sufficient basis for excusing an absence as unavoidable. However, this provision is permissive only and not mandatory. See AR 37-104, Section 12122, quoted above, which provides that an excuse of unauthorized absence as unavoidable may be denied “regardless of the outcome of the civil proceedings.” Furthermore, Section 12124 provides that if a member is released without trial on his agreement to make restitution or reparation for the offense, and Ms commander determines that absence was not due to the member’s misconduct, such circumstances are sufficient basis for excusing the absence as unavoidable. It will be remembered that the plaintiff was not tried for all of the alleged offenses in South Carolina and was not tried for any of those charged in Georgia. Decisions of the Comptroller *607 General hold that not all absences are required to be excused after acquittal. See 8 Comp. Gen. 496 (1929); 21 Comp. Gen. 845 (1942); and 39 Comp. Gen. 781,783 (1960), where it was held that “the basis for excusing absences should be an absence of misconduct rather than a lack of criminal culpability,” and that absence due to a member’s misconduct is not unavoidable. We agree with these principles.
Whether or not a member’s absence should be excused as unavoidable is an administrative determination made by the military authorities based on the facts involved in each case. It is a decision involving discretion and will not be disturbed 'by the courts in the absence of a showing that the decision was arbitrary, capricious, or unlawful. See Muldonian v. United States, 193 Ct. Cl. 99, 432 F. 2d 443 (1970); and Krivoski v. United States, 136 Ct. Cl. 451, 145 F. Supp. 239 (1956), cert. denied, 352 U.S. 954. The plaintiff tries to meet this requirement by saying that his two acquittals in civilian courts plus the dismissal of his court-martial conviction by the Court of Military Appeals in United States v. Borys, 18 U.S.C.M.A. 547, 40 C.M.R. 259 (1969) cleared him of all charges and as a result he must be considered innocent of the alleged crimes. We do not agree. The Court of Military Appeals did not clear him of all charges nor declare him innocent of them. On the other hand, the court considered him guilty of the crimes and spoke of “his vicious and depraved conduct” involving “purely civilian female victims, and constituted rape, robbery, sodomy, and attempts to commit such acts.” The Court of Military Appeals dismissed the court-martial case against the plaintiff on the ground of lack of jurisdiction over civilian crimes, based on the decision of the Supreme Court in O'Callahan v. Parker, 395 U.S. 258 (1969).
The military authorities made their own investigation of the plaintiff’s crimes in order to determine whether his absence while confined in civilian jails should be excused as unavoidable, as well as for court-martial purposes. This was known as an Article 32 Investigation under the Uniform Code of Military Justice, 10 U.S.C. § 832. This investigation was most thorough, as shown by a copy of the report of same filed with the court. The investigator personally inter *608 viewed the female victims of plaintiff’s crimes and took statements from them. These statements showed that plaintiff’s offenses followed a consistent pattern. His practice was to gain entrance to a house at night where a woman was sleeping by breaking in if necessary. He usually wore tennis shoes and soft gloves. He would place a knife at the throat of his victim and awaken her. He would threaten to kill her if she refused to cooperate. He then required her to lie on her stomach while he tied her hands behind her back. Then he would demand and get her money and other valuables. This done, he would take off all of her clothes, fondle her person, and then require her to put on high 'heel shoes and do the “twist” in front of him. Finally, he would make her kneel in front of him and engage in oral sodomy on his person. One of his victims vomited while this was going on and he merely wiped it away and made her continue. The other details of what he made the victims do in the acts of sodomy are even more sickening and depraved thatn the above, and for that reason will not be detailed here. After the sodomy, he frequently raped the victim. The condition or age of the female made no difference to him. One woman was pregnant, another had a small child at her side. Two others were teenage twins, 14 years of age, and another girl was under 16 years of age. During the commission of each offense, plaintiff used vulgar, obscene and gutter language pertaining to sex. The foregoing merely covers a part of the details of the Article 32 Investigation report. The report showed that the plaintiff had committed the following crimes in Georgia and South Carolina:
3 rapes
3 attempted rapes
3 burglaries
3 robberies
1 attempted sodomy
7 sodomies
1 felonious housebrealdng
1 larceny
4 assaults
1 threat to kill
Some of these offenses were the same as those charged against the plaintiff by the civil authorities in Georgia and *609 South Carolina and some were different. The report recommended that plaintiff be tried by general court-martial for the above crimes. From this report, can there be any doubt that the Army was justified in refusing to excuse plaintiff’s absence as unavoidable while incarcerated for these crimes ? We think not. It is easy to understand why he received sentences in two different court-martial trials of 60 years at hard labor with forfeiture of all pay and allowances.
We hold that the decision of the Army in refusing to excuse plaintiff’s absence while incarcerated in civilian jails as unavoidable was neither arbitrary, capricious, nor unlawful and was supported by substantial evidence. Consequently, he forfeited all pay and allowances during such period as required by the statute and regulation.
The plaintiff argues that even if he forfeited his pay and allowances during the time he was incarcerated by civilian authorities from June 25, 1968, through June 19, 1964, such period must be credited to him for retirement purposes. We do not agree. He cites Chapter 1, Section 10106 of AK 37-104 in support of his claim. That chapter and section pertain only to “Service Creditable for Basic Pay.” They do not mention retirement and are not relevant to the retirement problem before us. The plaintiff’s rights to retired pay must be established by and under the retirement statutes and not by the statutes and regulations dealing with the computation of basic pay. The pertinent parts of the applicable retirement statutes are as follows:
§ 3926. Computation of years of service: voluntary retirement; regular and reserve commissioned officers.
(a) For the purpose of determining whether an officer of the Army may be retired under section 3911, 3918, or 3924 of this title, his years of service are computed by adding—
(1) all active service performed as a member of the Army or the Air Force; [Emphasis supplied.]
:¡t ‡ ‡ ‡ $
[10 U.S.C. § 3926 (1970).]
§ 3927. Computation of years of service; mandatory retirement ; regular commissioned officers.
*610 (a) For the purpose of determining whether a regular commissioned officer may be retired under section '3918, 3915, 3916, 3919,3921,3922, or 3923 of this title, his years of service are the greater of—
(1) the years of service credited to him at the time of his original appointment in the Regular Army to determine his eligibility for promotion, * * *, plus his years of active commissioned service in the Regular Army after that appointment; * * * [Emphasis supplied.]
[10U.S.'C.§ 3927 (1970).]
We agree with the defendant that years of “active service” is the key element in these statutes. Title 10 U.S.C. § 101(24) defines “active service” as follows:
(24) “Active service” means service on active duty.
The term “active duty” is defined in pertinent part in Section 101 (22) of the same statute as follows:
(22) “Active duty” means full-time duty in the active military service of the United States. It includes duty on the active list, * * *.
The same definitions are found in Title 37 U.S. C. § 101 (18) and (20).
It is our view that the plaintiff cannot meet the requirements of these statutes for retirement purposes insofar as counting the time he was incarcerated by civilian authorities is concerned. During the period of such incarceration, the plaintiff was physically unable to perform any duty for the Army, and did not actually perform any active service on a full time basis for the military during this period.
We hold that the plaintiff cannot count the period of his confinement by civilian authorities for retirement credit purposes, because during that period he did not perform any active service on active duty in the active military service of the United ‘States as required by the retirement statutes.
The plaintiff also contends that he should be able to count the period from June 19,1964, to October 1,1969, while he was confined by the military during the court-martial proceedings, for retirement credit purposes. It is not necessary for us to reach this question in view of our decision that the plaintiff cannot count the period of his confinement by *611 civilian authorities for retirement purposes, because without being able to count that period, he does not have the necessary 20 years of active duty service required for retirement. However, since the plaintiff urges the point, we will discuss it briefly.
There are at least two reasons why plaintiff cannot count the court-martial period toward retirement. In the first place, in the special circumstances of this case, all of the analysis set forth above as to why he cannot count the civilian confinement period toward retirement applies with equal force to the court-martial period. While confined by the military, the plaintiff did not perform any active service on active duty in the active military service of the United States as required by the retirement statutes. Consequently, the period cannot be counted for retirement purposes.
In the second place, the major portion of the court-martial period, namely, from January 1, 1965, to October 1, 1969, cannot be counted for retirement purposes for the following reasons. When the plaintiff was passed over for promotion the second time, the Army was required to discharge him on January 1, 1965. See 10 U.S.C. § 3308(d) (3). However, before he could be discharged, court-martial jurisdiction attached and he was retained in the Army to answer the court-martial charges under the authority of 10 U.S.C. .§ 803, but not for active service on active duty. But even if it could be said that plaintiff’s continued Army status during this period was Army service, it was not service that could be counted for retirement purposes. It has been held in several cases that Army service occurring after a member’s mandatory date for retirement from the Army has passed is not creditable for retirement purposes. See 30 Comp. Gen. 195 (1950); 41 Comp. Gen. 375 (1961); 43 Comp. Gen. 742 (1964); and Richard v. United States, 136 Ct. Cl. 33, 152 F. Supp. 433 (1956). In 43 Comp. Gen. 742, the Comptroller General held that an officer who was required by law to be retired on a certain date, but who was retained beyond such mandatory retirement date for a hospital examination, could not be credited with the additional period of service after the mandatory retirement date in computing his retired pay. There it was held at 744:
*612 * * * The fact that the Army failed to accomplish his retirement on the date required by law would not seem to add to his rights in any way with respect to computing the amount of retired pay to which he is entitled.
We think this is the correct rule and should be applied here, as of January 1,1965, the mandatory discharge date of plaintiff.
The one remaining claim of the plaintiff is his contention that he is entitled to be paid a Bachelor’s Allowance for Quarters (BAQ) during the time of his confinement by the Army for the court-martial proceedings from June 19,1964, to October 1, 1969. The defendant says plaintiff is not entitled to BAQ during this period under the facts and the law of this case. We agree. Title 37 U.S.O. § 403(b) provides that a member is not entitled to BAQ if he is assigned to adequate quarters of the United States or a housing facility under its jurisdiction. Section B, Chapter 3, Army Regulations 37-104, Section 10317a provides that a member without dependents, in confinement in a guardhouse or brig pursuant to a court-martial by which he is acquitted, or the sentence is set aside or disapproved, is entitled to basic allowance for quarters during such period provided he was in receipt of such allowance prior to the commencement of his confinement or he was living in assigned government quarters prior to commencement of the confinement and such assignment was in fact terminated prior to the period of confinement, citing 40 Comp. Gen. 169 (1960) and 40 Comp. Gen. 715 (1961). This appears to be the correct rule. The question then is whether or not plaintiff was receiving BAQ prior to the beginning of his confinement on June 22,1964. It is agreed by the defendant that plaintiff was receiving BAQ until June 19,1964. On that date he was released to the Army by the civilian authorities. On June 22, 1964, plaintiff was assigned quarters and restricted to such quarters and several other buildings on the Fort Gordon Military Reservation, Fort Gordon, Georgia. Thus he was assigned bachelor quarters and confined on June 22, 1964, and no authorization for payment of BAQ as required by the regulations had been issued to him prior to such confinement. No doubt this was due to the fact that he had been furnished quarters and was not authorized to *613 live off tbe post. The whole problem as to the plaintiff was well covered in a letter dated March 10, 1967, to Major Irving C. Hoag, Jr., from .Frank H. Weitzel, Assistant Comptroller General, bearing identification No. B-160588, and attached to Defendant’s Motion for Summary Judgment as Exhibit 5, where it is stated:
*****
At the time Captain Borys returned to Fort Gordon upon his release from civil authorities on June 19,1964, no authorization for payment of basic allowance for quarters as required by paragraph 10311-g, Army Regulations 37-104, was furnished him presumably for the reason that he was furnished quarters or they were available for his occupancy and, as far as the record shows, he was not authorized to reside off the base. Therefore, the record does not provide any basis to conclude that at the time the orders of June 22, 1964, restricted him to the quarters assigned under those orders, he was entitled to a quarters allowance. Thus he had no entitlement to such an allowance to continue when he entered that restricted status. Neither is there any showing that adequate quarters were not available for his occupancy during the period he was restricted in the use of his assigned quarters and, of course, he was put 'to no personal expense for private quarters. Accordingly, at the time of his transfer to Fort Leavenworth Disciplinary Barracks under court-martial order dated January 23, 1965, he was not entitled to a quarters allowance and therefore during the period he was confined at Fort Leavenworth, he was not entitled to such an allowance.
Hi H* ifi H* *
We conclude that the plaintiff is not entitled to a Bachelor’s Allowance for Quarters during the period in question.[1]
Accordingly, plaintiff’s motion for summary judgment is denied, defendant’s cross-motion for summary judgment is granted, and plaintiff’s petition is dismissed.

 The plaintiff also Included In Us suit a claim for an amount equal to the surcharge he paid for meals furnished to him while confined by the military at Fort Leavenworth, Kansas. However, this claim has not been considered by the court because the parties announced at oral argument that they had reached an agreement for its settlement. [The dismissal of the petition does not relate to the claim referred to in this footnote (Fifth Cause of Action), and judgment in plaintiff’s favor on that claim, based upon a stipulation of the parties, in the sum of $283.16 was entered by the court on May 14, 1973.]