"Defendant alone moves for summary judgment, asserting its panoply of pretrial defenses: the statute of limitations, laches, our lack of jurisdiction under the Testan rule, and finally a judgment on the merits of the issues presented. None of these grounds persuades us, though, so we deny defendant’s motion and remand for the trial that is needed in order to develop the material facts that will enable us to resolve this case.
"Plaintiff enlisted in the United States Army for three years beginning March 30, 1966, and served one of those years in combat in Vietnam. Soon after his return from combat, while on authorized leave, plaintiff was seriously injured in an automobile accident and treated, with the Army’s knowledge, in a local civilian hospital. When he was released from there, plaintiff reported to a nearby military facility for medical examination and duty instructions, where he was placed on 30-days convalescent leave and transferred to an established Army hospital. Over the next few months, plaintiff was examined periodically, and *813 returned each time to 30-days convalescent leave status, until December 1968. Then plaintiff requested an early release from Army service because of his disability. According to plaintiffs version, which is not obviously fictitious and therefore we must assume is true for purposes of addressing defendant’s summary judgment motion, he made arrangements with his commanding officer for his separation from the Army. He was processed for discharge, and sent home on convalescent leave once again to await final notice of separation. He was advised that his discharge papers would be issued and that no further reporting would be necessary. Plaintiff pleads that he received various correspondence from the Army that engendered his reasonable belief that he had in fact been discharged. On the other hand, he seems to have received some payments that would have been inexplicable if he was discharged. That was not the Army’s view, evidently, because plaintiff was then listed as a deserter from active duty, and was arrested by the FBI on December 17, 1975. After some negotiations not material at this stage of the case, plaintiff was offered and accepted a general discharge from the Army effective January 28, 1976. Plaintiff is now willing apparently to assume that he was actually in active duty status until the date of his discharge, for the purpose of presenting his present claim to pay and entitlements until that date, and to an amendment of his records to show that his discharge was honorable. Plaintiff filed his petition on March 15, 1976.
"With regard to defendant’s statute of limitations defense, we need not delve deeply into the technical rules that surround this technical point of law, cf. Friedman v. United States, 159 Ct. Cl. 1, 310 F.2d 381 (1962), cert. denied, sub nom. Lipp, 373 U.S. 932 (1963), to be reminded that the underlying precept is that the limitations period cannot begin to run until the claimant has reason to know that he holds a ripe claim. Id. at 6-7. See also, Urie v. Thompson, 337 U.S. 163, 170 (1949). In this case, it will be essential for plaintiff to show that he reasonably had no cause to believe that he had a claim for pay arising out of his continuing obligation to serve in the Army. Not until his arrest late in • 1975, plaintiff seems to assert, did he *814 realize that he was not discharged in 1968, as he had thought, and therefore that he was entitled to pay, and then he promptly filed this suit. Of course, this very point is central to plaintiffs case on its merits, for if he fails to prove the reasonableness of his conduct, his claim must fail before 37 U.S.C. §503, more fully discussed below. But if plaintiff prevails on the proofs, he would withstand the statute of limitations challenge as well. Because these questions are so integrated, it is premature to pretermit plaintiffs case by granting the Government’s motion for summary judgment on the supposition that plaintiffs only claim accrued at the expiration of his original enlistment, March 1969.
"Defendant says plaintiffs claim does not run after that date, citing O’Callahan v. United States, 196 Ct. Cl. 556, 451 F.2d 1390 (1971) and Clackum v. United States, 148 Ct. Cl. 404, 296 F.2d 226 (1960), etc. When an illegal discharge antedates the expiration of an .enlistment, back pay runs only to the expiration. But when there was no discharge, legal or illegal, we think the date loses its significance and the pay claim continues to run, particularly when, as here, defendant asserts the man still had his military status and has arrested him for not performing his duties as a soldier.
"Similarly, defendant’s motion on the ground of laches fails. Defendant aptly notes that a laches defense is an equitable doctrine, barring an action brought by a plaintiff whose unreasonable delay prejudices a defendant. Viewing the facts in the light most favorable to plaintiff, as we must here, we cannot disregard the possibility that plaintiff first realized his entitlement to pay either when he was arrested in December 1975, or when he was later discharged. We are ill-prepared to conclude that plaintiffs commencing this action in March 1976 represents an unreasonable delay.
"The most substantial among defendant’s defenses is its contention that plaintiff is unentitled to pay for any period during which he was avoidably absent from duty. Defendant’s case rests on 37 U.S.C. §503, which states that
(a) A member of the Army * * * who is absent without leave or over leave, forfeits all pay and allowances for the period of that absence, unless it is excused as unavoidable.
*815 This statute is an exception to the general rule that the right to military pay depends on status, not on the actual performance of duty. See Bell v. United States, 366 U.S. 393 (1961).
"We are, as yet, unwilling to conclude that plaintiff cannot show that his absence was in good faith, justified by communications with the Army, and might be regarded as unavoidable under the statute. We conclude that plaintiff should have the opportunity of trial to satisfy the court that his absence did not work a forfeiture. The trial judge shall make such fact findings and recommend legal conclusions that will indicate the applicability of section 503. Our decisions in Switkes v. United States, 202 Ct. Cl. 162, 480 F.2d 844 (1973), reh. denied, 202 Ct. Cl. 179, and Borys v. United States, 201 Ct. Cl. 597, cert. denied, 414 U.S. 1001 (1973), construe the word 'unavoidable5 in this statute and do not indicate that an absence from duty based on a reasonable good faith belief one had lawfully returned to civilian status, would not be 'unavoidable.
"That statute also serves the purpose at this stage of litigation, together with other military pay legislation, in providing us with a response to defendant’s remaining defense, that United States v. Testan, 424 U.S. 392 (1976), precludes our jurisdiction. These statutes contemplate that plaintiff shall be entitled to the pay he claims if he proves that such was unjustifiably withheld, and was not legally forfeited. That money claim, the cornerstone of our jurisdiction, is plainly present here. Incident to that part of this suit, as stated in plaintiffs count I, we are further empowered to entertain plaintiffs requests, in his count II, for correction of his records and amendment of his discharge.
"Accordingly, it is ordered that defendant’s motion for summary judgment be denied, and the case remanded to the Trial Division for further proceedings.”