Mark CAMERON, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 94–763C.

United States Court of Federal Claims.

Oct. 31, 1995.

Melvin L. Roberts, Melvin L. Roberts & Associates, York, South Carolina, for plaintiff.

Armando O. Bonilla, with whom were Assistant Attorney General Frank W. Hunger, David M. Cohen, and James M. Kinsella, Washington, D.C., for defendant. Captain Rodger A. Drew, Jr., Air Force Litigation Services Agency, General Litigation Division, Arlington, Virginia, of counsel.

## OPINION

BRUGGINK, Judge.

This is a military pay claim. The plaintiff, Mark Cameron, seeks relief from a discharge "Under Other Than Honorable Conditions" from the United States Air Force. His discharge was based on a finding by a review board that he had committed murder and adultery. The defendant has filed a motion for summary judgment. After consideration of the parties' oral and written arguments and in light of the administrative record and the applicable law, the court grants the defendant's motion for the reasons set forth below.

## BACKGROUND [1]

■ Mr. Cameron enlisted in the United States Air Force ("Air Force") on December

1. This is a review pursuant to RCFC 56.1. The facts are drawn from the administrative record.

29, 1982. He reenlisted on December 5, 1986 for an additional six year term. On March 15, 1990, Mr. Cameron was convicted of murdering his wife, Mary Cameron, in the Court of General Sessions, Berkeley County, South Carolina. Following his conviction, and while his appeal was pending, Mr. Cameron began serving a life sentence.

On April 11, 1990, Mr. Cameron was notified that, based upon the civilian conviction, he was being recommended for separation from the Air Force pursuant to Air Force Regulation (AFR) 39–10, ¶ 5–48(a).[2] Mr. Cameron waived his right to a hearing before an administrative discharge board, requesting only that the implementation of his discharge be stayed until the resolution of his pending appeal.[3] The discharge authority accepted Mr. Cameron's waiver, and stayed the implementation of the separation order pending the resolution of the appeals process. The conviction was affirmed by the South Carolina Supreme Court on October 7, 1991.

Mr. Cameron also brought a motion for post conviction relief. Three years after his conviction, on May 5, 1993, the Court of Common Pleas granted the motion for relief, set aside the conviction, and ordered the case remanded for a new trial. *Cameron v. State of South Carolina*, No. 91–CP–08–2092 (Ct.Common Pleas, 9th Cir., May 11, 1993). The post conviction relief was granted based

on ineffective assistance of trial counsel, prosecutorial misconduct, and newly discovered evidence. *Cameron*, No. 91–CP–08–2092, at 7–14. As a result, the June 1990 discharge order, which had been stayed pending appeal, was vacated pursuant to AFR 39–10, ¶ 6–57.[4]

Mr. Cameron returned to duty at Charleston Air Force Base in South Carolina, on June 17, 1993, after being released on bond pending a new civilian trial. On July 21, 1993, Mr. Cameron was again notified by his commanding officer that he was recommending that Mr. Cameron be separated from the Air Force based upon the commission of a "serious offense"—the murder of his wife— pursuant to AFR 39–10, ¶ 5–49(c).[5] The commander recommended that Mr. Cameron receive a discharge "Under Other Than Honorable Conditions." Mr. Cameron asserted his right to present his case before an administrative discharge board, and the hearing convened on October 27, 1993.[6] Mr. Cameron was represented by both civilian and military counsel.

During the hearing, the Air Force offered into evidence portions of the transcript from Mr. Cameron's civilian murder trial, specifically, the testimony of Mr. Cameron and Ms. Marsha McGuire, the state's chief witness. Mr. Cameron objected to the submission of this evidence to the board. The legal advisor to the discharge board[7] determined that

---

See *Long v. United States*, 12 Cl.Ct. 174, 176 (1987). Although there are no material disputes of fact, the court is, in any event, permitted in its limited review of the agency action to base findings on the record developed below.

2. AFR 39–10, ¶ 5–48(a) (9 August 1991) provides: Airman are subject to discharge for misconduct based on conviction by civilian authorities or action tantamount to a finding of guilty, including similar adjudications in juvenile proceedings, when: (1) A punitive discharge would be authorized for the same or a closely related offense under the [Manual for Courts–Martial]....

3. Pursuant to a recommendation for separation "Under Other Than Honorable Conditions", an airman is entitled to a hearing before an administrative discharge board. AFR 39–10, ¶ 6–2(b).

4. AFR 39–10, ¶ 6–57 states, "[i]f [an] appeal results in the conviction being set aside, the airman

may not be discharged due to [the] civilian conviction."

5. AFR 39–10, ¶ 5–49 states, "[a]irmen are subject to discharge for misconduct based on the commission of a serious offense if a punitive discharge would be authorized for the same or a closely related offense under the [Manual for Courts–Martial]...." Subparagraph (c) includes "other serious offenses" not specifically enumerated within the paragraph.

6. Mr. Cameron's hearing was originally scheduled for September 7, 1993, however, Mr. Cameron requested, and received, a time extension.

7. The board is assisted by a legal advisor who is a judge advocate and whose duties include clarifying the issues presented, ruling on the admissibility of evidence and on procedural matters, and instructing the board with respect to its functions, duties, and procedures. AFR 39–10, ¶ 8–6.

there were adequate safeguards for the truth of the matters contained in the testimony offered and overruled Mr. Cameron's objections.

Mr. Cameron offered into evidence the transcript of his civilian post conviction relief hearing in its entirety. The legal advisor sustained the Air Force's objection to non-witness statements contained in the transcript, such as arguments by counsel, as well as testimony which did not relate to whether Mr. Cameron had, in fact, murdered his wife. The legal advisor specifically excluded other items from the civilian proceedings, including a discovery motion, the post conviction relief application, the order granting post conviction relief, a police interview summary, and a polygraph test. However, the legal advisor did permit introduction of the remainder of the offered testimony, including testimony that was developed at the post conviction relief hearing.

After reviewing the evidence presented, the board, on its own motion, requested that the notification letter be amended to include adultery as an additional basis for Mr. Cameron's separation.[8] The legal advisor ruled that the expansion of charges was permissible pursuant to AFR 39-10, ¶8-13.[9]

On October 30, 1993, the discharge board found that Mr. Cameron had committed the serious offense of murder and that a punitive discharge would be authorized for the same or closely related offense under the Manual for Courts-Martial. At this time, Mr. Cameron requested and received an additional 30 days to respond to the adultery allegation. The board reconvened on November 30, 1993, and found that Mr. Cameron had committed adultery on different occasions between June 1, 1985 and June 13, 1989. The board. recommended that Mr. Cameron be

separated "Under Other Than Honorable Conditions" and that he not be offered probation or rehabilitation. This recommendation was approved by the Air Force chain of command, and implemented by Lieutenant General Malcolm B. Armstrong, the discharge authority. The state criminal case has since been terminated by the state prosecutor *via nolle prosequi.*

Mr. Cameron filed this action on March 20, 1995, alleging that his separation and discharge from the Air Force violated his right to due process, was not based on substantial evidence, and was contrary to applicable statutes and Air Force regulations. He requests that the court reinstate him to active duty with full pay and allowances, or in the alternative, upgrade his discharge to "Honorable". As a separate claim, he seeks all pay and allowances which were withheld during his two periods of civilian confinement.

## DISCUSSION

### 1. *Jurisdiction*

■■■■ This court's jurisdiction to entertain military separation appeals is based on the Tucker Act, 28 U.S.C. § 1491 (1988), which grants the court the authority to hear claims founded upon acts of Congress, such as pay statutes. *See United States v. Testan,* 424 U.S. 392, 397–400, 96 S.Ct. 948, 952–54, 47 L.Ed.2d 114 (1976); *Sanders v. United States,* 219 Ct.Cl. 285, 297, 594 F.2d 804, 810–11 (1979); *Brown v. United States,* 30 Fed. Cl. 227, 229 (1993), *aff'd,* 26 F.3d 139 (Fed. Cir.1994). Under 37 U.S.C. § 204(a)(1) (1988), Mr. Cameron was entitled, absent a proper discharge, to basic pay as "a member of a uniformed service who is on active duty." If Mr. Cameron's involuntary discharge was improper,[10] his statutory right to pay was not

---

8. The instances of adultery which form the basis for separation were known by Mr. Cameron's commanding officer prior to the commencement of the original discharge proceedings.

9. Paragraph 8–13 states, "[n]ew or additional evidence may be developed at the hearing. The board may, on its own or the recorder's motion, amend or supplement the notification letter to conform to the new evidence." AFR 39–10, ¶8–13.

10. This includes the assertion that the impropriety arises because of deprivation of due process.

Although it is well settled that this court does not have jurisdiction over a claim founded solely upon the Due Process Clause, *Alabama Hosp. Ass'n v. United States,* 228 Ct.Cl. 176, 180, 656 F.2d 606, 609 (1981), *cert. denied,* 456 U.S. 943, 102 S.Ct. 2006, 72 L.Ed.2d 465 (1982); *United States v. Connolly,* 716 F.2d 882, 887 (Fed.Cir. 1983) *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984), a claim for back pay or wrongful discharge based upon a constitutional violation is within this court's jurisdiction.

extinguished. *Adkins v. United States,* 68 F.3d 1317, 1321 (1995) (citations omitted).

### 2. *The discharge*

 A decision by the military to discharge a serviceman comes before this court subject to a narrow standard of review. A former serviceman must establish, by clear and convincing evidence, that the military's decision to separate him "was arbitrary, capricious, in bad faith, unsupported by substantial evidence or contrary to law, regulation or published procedure." *Wyatt v. United States,* 23 Cl.Ct. 314, 318–19 (1991). *See Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed.Cir.), *cert. denied,* 479 U.S. 853, 107 S.Ct. 188, 93 L.Ed.2d 121 (1986); *Dougharty v. United States,* 27 Fed.Cl. 436, 439, *aff'd,* 11 F.3d 1073 (Fed.Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2100, 128 L.Ed.2d 662 (1994); *Ferrell v. United States,* 23 Cl.Ct. 562, 567 (1991). An administrative decision may be arbitrary if the decisionmaker failed to consider all relevant evidence. *Wyatt,* 23 Cl.Ct. at 321 (citing *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971)). In asserting procedural errors, there must be an adequate showing of a nexus between the error or injustice and the separation from the service. *Dougharty,* 27 Fed.Cl. at 439.

 In evaluating discretionary decisions of the discharge authority, even if the court disagrees, "it cannot substitute its own judgment if reasonable minds could reach differing conclusions." *Brown,* 30 Fed.Cl. at 231 (citing *Sanders,* 219 Ct.Cl. at 302, 594 F.2d at 814). *See also Yount v. United States,* 25 Cl.Ct. 289, 293, *aff'd,* 985 F.2d 583 (Fed.Cir.1992). Instead, this court "will set aside [Cameron's] discharge as arbitrary or capricious only if it was not based on relevant factors, lacked a rational basis or represents

*Hamlet v. United States,* 873 F.2d 1414, 1416–17 (Fed.Cir.1989); *Lee v. United States,* 32 Fed.Cl. 530, 542–43 (1995); *Jackson v. United States,* 192 Ct.Cl. 765, 428 F.2d 844 (1970); *Swaaley v. United States,* 180 Ct.Cl. 1, 376 F.2d 857 (1967). In short, the pay statutes are the only necessary requisite to jurisdiction. Once jurisdiction attaches, the serviceman can argue that his deprivation of pay was improper for various reasons, including an infringement of constitutional rights.

a clear error in judgment." *Wyatt,* 23 Cl.Ct. at 320 (citing *Bowman Transp. v. Arkansas-Best Freight Sys.,* 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974) (explaining scope of arbitrary and capricious review under Administrative Procedures Act)).

Mr. Cameron contends that his discharge was improper for several reasons. He argues that the Air Force erred by: (1) relying on the murder charge as a basis for his separation even after his civilian conviction was set aside; (2) allowing portions of the transcript from the original murder trial to be entered into the record and admitted as evidence against him; (3) refusing to consider certain evidence proffered by Mr. Cameron; (4) rendering a decision unsupported by substantial evidence; and, (5) permitting the amendment of the notification letter to include the adultery charge as an additional basis for his discharge. The basis for these claims shall be addressed in turn. In addition, Mr. Cameron asserts that both the discharge and the failure to restore his back pay were violations of the Due Process Clause. That contention will be addressed separately.

### a. *The Murder Allegation as a Basis for Mr. Cameron's Separation*

 Congress has empowered the Secretary of the Air Force to prescribe the policy and procedures applicable to the administrative separation of airmen. 10 U.S.C. § 1169 (1988). The Air Force evaluates the quality of service "according to standards of acceptable personal conduct ...", AFR 39–10, ¶ 1–17(a), in addition to military conduct. As such, the regulations specifically permit conduct within the civilian community to be evaluated, even if the conduct is not subject to the jurisdiction of the Uniform Code of Mili-

Although this court has, in two recent opinions, found jurisdiction lacking where a plaintiff asserted a due process right in conjunction with a back pay claim, these claims were based upon an assertion of a liberty interest which is only remedied by a hearing to clear one's name. *See Gilchrist v. United States,* 33 Fed.Cl. 791, 806 (1995); *Lee v. United States,* 32 Fed.Cl. 530, 543–47 (1995).

tary Justice ("UCMJ"). AFR 39–10, ¶ 1–17(b).

In order for an airman to be subject to discharge for the commission of a "serious offense" under AFR 39–10, ¶ 5–49(c), a punitive discharge must be authorized for the same, or a closely related offense, under the Manual for Courts–Martial. AFR 39–10, ¶ 5–44, 49. Murder is a covered offense. Article 118, UCMJ, 10 U.S.C. § 918. Mr. Cameron nevertheless asserts that the Air Force was precluded from attempting to prove that he murdered his wife because the post conviction relief ("PCR") order vacated his civilian conviction. He relies upon two virtually identical Air Force regulations in support of this contention, AFR 39–10, ¶ 8–14, and AFR 11–31, ¶ 3(c). The former provides:

> Boards may not enter findings contrary to matters previously adjudicated in courts-martial and civilian court convictions; however, this does not preclude the respondent from presenting matters in mitigation, extenuation, and explanation. . . .

AFR 39–10, ¶ 8–14. When Mr. Cameron raised this argument below, the legal advisor concluded that the civilian murder charge did not fall within the meaning of a "matter[ ] previously adjudicated," because the case was remanded for a new trial and that the order was not a final determination of Mr. Cameron's guilt or innocence.

The court does not disagree with the legal advisor's conclusion. The order granting post-conviction relief is not a final disposition of the civilian criminal charge. We also conclude, however, that these regulations are inapplicable to the present situation. Both these provisions only limit a board's ability to make findings contrary to "convictions." There was no conviction here. It is clear from the phrasing of the regulation—respondents are not "preclude[d] . . . from presenting matters in mitigation, extenuation, and explanation"—that the purpose of these provisions is to prevent the board from concluding that the respondent did not commit a crime when a criminal prosecution concluded to the contrary.

Mr. Cameron also relies on AFR 39–10. That regulation states, at paragraph 5–4(a):

> A member may not be discharged administratively based upon conduct that has been the subject of . . . [j]udicial proceedings, military or civilian, resulting in acquittal or action having the effect thereof unless . . . [s]uch action is based upon a judicial determination not going to the guilt or innocence of the respondent; or . . . [t]he judicial proceeding was conducted in a State or foreign court, and the discharge was approved by the Secretary of the Air Force. . . .

AFR 39–10, ¶ 5–4(a). The order granting PCR is not an acquittal, however, or a final disposition which has the same effect as an acquittal. It is solely an order remanding the case for a new trial. While the PCR order casts doubt on Mr. Cameron's guilt, the only necessary basis for the ruling was that procedural errors and prosecutorial misconduct had tainted the proceedings and necessitated a new trial.

*b. The Introduction of Transcribed Testimony from the Earlier Civilian Murder Trial and the Legal Advisor's Exclusion of Certain Evidence Offered by Mr. Cameron*

The administrative discharge board is a fact finding body which provides recommendations to the Air Force. Its function is administrative, not judicial. AFR 39–10, ¶ 8–1. Air Force regulations provide that "all matters that are relevant and material to an issue or inquiry are admissible." AFR 11–31, ¶ 3(a). The judicial rules of evidence are not directly applicable. AFR 39–10, ¶ 8–13. Hearsay evidence is thus admissible, provided that the legal advisor determines there are adequate safeguards for the truth. AFR 11–31, ¶ 3(a)(4). In addition, the legal advisor has the authority and discretion to impose reasonable restrictions on matters considered by the administrative discharge board based upon relevancy, competency, and materiality. AFR 39–10, ¶ 8–13.

■ At the hearing, Mr. Cameron objected to the introduction of the prior testimony of Marsha McGuire, a woman who had worked for the same escort service for which Mr. Cameron was a driver. Mr. Cameron

avers here that due to the ineffective assistance of counsel during the civilian trial and prosecutorial misconduct, cross examination was not adequate. He also contends that the testimony is unreliable.

In permitting the evidence, the legal advisor concluded, "the relief that was granted [by the post conviction relief order] was more in the nature of recognition of the problem with evidence that was not included in the trial, as opposed to any problem with the evidence that was included with trial." AR II, at 154.[11] The legal advisor also determined that, while he could not reach a conclusive determination as to the veracity of the testimony, there were adequate safeguards for truthfulness, and he would allow the board to reach its own conclusions given all the evidence provided.[12] This ruling is not arbitrary or contrary to law. The testimony was from a formal court proceeding and was under oath. Mr. Cameron had the right, pursuant to Air Force regulations, to call live witnesses to testify before the board to refute any part of Mrs. McGuire's testimony that he felt was untruthful.[13] AFR 11–31, ¶ 2(d)(4).

■ Mr. Cameron also challenges the legal advisor's exclusion of the PCR hearing testimony of Mr. Grover Seaton, Mr. Cameron's defense attorney at the civilian criminal trial, the testimony of Mr. Steve Davis, the assistant solicitor who prosecuted the case, a discovery motion made by Mr. Cameron, the petition for post conviction relief and the order granting post conviction relief. Mr. Cameron contended below, as he does here, that these exhibits were necessary for the board to understand the background of the case and why post conviction relief was granted.

The legal advisor determined that these materials were irrelevant and immaterial on the issue of whether Mr. Cameron actually committed the offense. He also held that the opinions of the judge granting post conviction relief were not binding on the board. The legal advisor stated, "this hearing is … concerned with the evidence itself, … not with the issues of why it was not available at the first trial. [The point is,] … if the evidence is available now, it can be presented to the board members to now take into consideration." AR II, at 169. The court agrees. The issue before the board was whether or not Mr. Cameron had murdered his wife, not whether the prosecutor acted improperly or whether the defense counsel was incompetent. Neither the testimony of Seaton or Davis, nor the PCR petition and order, would have been probative of the relevant issue. Any probative evidence which the civilian judge addressed in his order granting PCR could have been put before the board to enable it to reach its own conclusion.

■ Mr. Cameron also asserts that an interview of Ms. McGuire by policeman Smalley was erroneously excluded. The record reflects that it was admitted without objection.

The admissibility of Ms. McGuire's polygraph test is controlled by Air Force regulations. "Results of polygraph tests are not admissible except with the consent of both the respondent and the recorder and the

---

11. "AR" refers to the administrative record filed with this court on March 8, 1995. This record consists of five volumes. Cites to specific volumes will be by corresponding roman numeral.

12. The legal advisor ruled as follows:
 I will allow the transcript of the testimony to go to the board members. I think that the points you're raising are … really argument to be made to the members as to credibility but I think there's sufficient reliability to at least allow it to go to the members to make their own determination.
 AR II, at 156.

13. The legal advisor specifically advised Mr. Cameron of this right. He stated:

[Y]ou have the right to request the appearance before this board of any witness whose testimony you believe can contribute materially to this case. If you desire, you may ask the recorder to assist you in securing witnesses. Those witnesses will be invited to appear at no cost to you. …
AR II, at 150. In addition, the legal advisor advised Mr. Cameron that:
[I]n accordance with AFR 11–31, you have the right during the proceedings of this board to submit any evidence you may desire the board to consider, including sworn or unsworn statements, affidavits, certificates, stipulations, and depositions.
AR II, at 151.

approval of the legal advisor." AFR 11–31, ¶ 3(a)(6). The legal advisor properly concluded that he was bound by the regulation upon the recorder's refusal to consent to its use. In addition, in response to Mr. Cameron's assertion that the regulation was intended only to apply to polygraph tests offered by the recorder, the legal advisor found that, even if that were the case, there was no showing of adequate safeguards for the truth of the results. The legal advisor's analysis was neither arbitrary nor capricious.

#### c. Sufficiency of the Evidence to Support the Murder Charge

■ The burden of proof was on the Air Force to establish each allegation in the original and amended notification letters by a preponderance of the evidence. AFR 11–31, ¶ 3(b). The court has read the entire record presented to the board, which included portions of the civilian trial transcript, testimony provided at the civilian post conviction relief hearing, documents, and well as live testimony.[14] If the board gave any credence to Ms. McGuire's testimony, that evidence alone would have supported a finding that Mr. Cameron murdered his wife. She testified that Mr. Cameron told her he was going to kill his wife, that she participated in the events surrounding the murder, and that he admitted that he had, in fact, gone through with it. In addition, forensic evidence available at the civilian trial and the PCR hearing was made available to the board. This included: a description of the evidence by the medical examiner; the autopsy report; the forensic lab report; fingerprint cards and analysis reports; a firearms report; toxicology and serology reports; and, an analysis of items taken from the body of the deceased. It is sufficient for the court to note that this evidence was consistent with the prosecution's theory of how Mr. Cameron murdered his wife.

Mr. Cameron, in turn, was permitted to put forth any evidence, except those items previously mentioned, including evidence which resulted in the order granting PCR. In addition to forensic exhibits, he was permitted to present portions of the PCR hearing transcript, an order regarding the processing of evidence, statements made by Marsha McGuire, Tony Halverson, Major Michael Parker and Major Sergeant Eric Carlson, an excerpt from a textbook regarding gun shot wounds, fourteen photographs, and a summary of the route he traveled the night of the murder. He called no witnesses.

■ The board considered this evidence and found, by a preponderance of the evidence, that Mr. Cameron did murder his wife and that a punitive discharge would be authorized for the same or a closely related offense under the Manual for Courts–Martial. It is not the court's role to make new findings. It is sufficient to sustain the discharge that the board's findings regarding the murder charge were supported by substantial evidence.

#### d. The Adultery Charge

■ Several deficiencies are asserted regarding the adultery charge.[15] First, Mr. Cameron contends that the charge was added too late. He points to the wording of the relevant regulation, AFR 39–10, ¶ 8–13, which states, "[n]ew or additional evidence may be developed at the hearing. The board may, on its own or the recorder's motion, amend or supplement the notification letter to conform to the new evidence." He asks this court to construe narrowly the phrase "new or additional evidence" to permit only the introduction of evidence that has recently come to the attention of Air Force personnel and thus to require the exclusion of evidence previously known. Mr. Cameron contends

---

14. It should be noted that, pursuant to the legal advisor's ruling, no reference to a conviction, or the fact that Mr. Cameron was ever convicted, or that a conviction was set aside, was permitted while the board was hearing evidence.

15. Mr. Cameron contends that the Air Force could not base his separation upon adultery because adultery is not listed as a separate offense under the Manual for Courts–Martial. This is

erroneous. Paragraph 62 of Part IV of the Manual for Courts–Martial specifically lists adultery as an offense under Article 134 of the Uniform Code of Military Justice and authorizes, for such an offense, a "Dishonorable Discharge," the most severe type of punitive discharge applicable to airmen. Manual for Courts–Martial, United States, 1984, Part IV, ¶ 62(e).

that since his commanding officer knew of the instances of adultery and chose not to include them in the notification letter, the evidence is not "new or additional" and may not be included. The court declines to take such a restrictive view of this provision.

■ The Air Force's reasonable interpretation of its own regulations is entitled to deference. *See United States v. Clark,* 454 U.S. 555, 565, 102 S.Ct. 805, 811, 70 L.Ed.2d 768 (1982); *Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed.Cir.), *cert. denied,* 479 U.S. 853, 107 S.Ct. 188, 93 L.Ed.2d 121 (1986). The court finds the legal advisor's interpretation of this regulation to be reasonable and supported by the plain meaning of its language. The regulation at issue permits charges to be based on new or *additional* evidence, clearly contemplating reliance on information which may be new to the board but not unknown to other Air Force personnel prior to the drafting of the initial notification letter.

Mr. Cameron's reliance on this court's decision in *Gifford v. United States,* 23 Cl.Ct. 8 (1991), is misplaced. In *Gifford,* separation proceedings against an airman were based upon AFR 36–2, which provides for separation based upon "misconduct" by the service member. 23 Cl.Ct. at 10–11. After a Board of Inquiry hearing, and an Air Force Board of Review hearing, an honorable discharge was recommended for the airman. *Id.* The Secretary of the Air Force then directed that the discharge under 36–2 be terminated, and that the airman be separated based upon AFR 36–3 for "substandard performance." The soldier was not given an opportunity to respond to the new charge. The court concluded that this was improper, stating, "[the airman] was denied due process when he was not apprised of, and therefore, was unable to defend against, the ultimate basis for his dismissal." *Gifford,* 23 Cl.Ct. at 20. The present facts are distinguishable. Mr. Cameron was given an additional 30 days to prepare his response to the new charge. When the hearing resumed he put on additional evidence on his behalf. He was not prejudiced by the procedures.

■ Mr. Cameron also asserts that his separation in 1994 was based upon adultery which occurred during his "prior enlistment,"

contrary to Air Force regulations which only permit the use of the member's record during his current enlistment. He asserts that his 1986 re-enlistment period would have ended in 1992, and that the extension for the convenience of the government is a separate enlistment period. He is in error. Air Force regulation 39–10, paragraph 1–20 specifically states:

> Except as provided in b below, characterization of service will be determined solely by the member's military record during the current enlistment or period of service to which the separation pertains, *plus any extensions of the enlistment prescribed by law or regulation,* or made by consent of the member.

AFR 39–10, ¶ 1–20 (emphasis added).

Mr. Cameron's civilian incarceration resulted in 1107 "lost days" which, pursuant to Air Force regulation, are to be made up by the airman. 7A Department of Defense Military Pay & Entitlement Manual (Aug. 31, 1992) ("DoDPM") ¶ 10104(c) ("[a]fter return to duty, an enlisted member is liable to make up lost time"). As a result, Mr. Cameron's second enlistment was extended by administrative action for 1107 days. There was therefore only one relevant enlistment period, beginning in 1986. It was thus not erroneous to base the discharge on his admitted acts of adultery that took place in 1988 and/or 1989.

■ Finally, Mr. Cameron contends that the Air Force did not meet its burden of proof with respect to the adultery allegation. The elements necessary to a finding of adultery are: (1) that the accused wrongfully had sexual intercourse with a certain person; (2) that the accused or the other person was married to someone else at the time; and, (3) that, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces. Manual for Courts–Martial (1984) Part IV, 62 Art. 134 (Adultery). Mr. Cameron contends that the Air Force did not prove these elements because his wife consented and the Air Force failed to show any

prejudice to good order and discipline or to bring discredit upon the Air Force.

■ An airman's discharge "Under Other Than Honorable Conditions" may be appropriate when the separation is based upon "one or more acts or omissions that constitute a significant departure from the conduct expected of airmen." AFR 39–10, ¶ 1–18(c). The characterization of an airman's service at separation is based upon the quality of the airman's service as reflected in his military record, including performance of duty, personal conduct, and the reason for separation. AFR 39–10, ¶ 1–17. An airman's conduct in the civilian community may also be considered in characterizing the separation, and "[t]he burden of proof is on the respondent to show that such conduct did not adversely affect the respondent's service." AFR 39–10, ¶ 1–17(b). The standards for military service have been established by the Secretary of the Air Force and are based upon time honored customs and traditions of the military, AFR 39–10, ¶ 1–5, and it is the function of the Air Force, not this court, to determine who is fit or unfit for military service. *Orloff v. Willoughby,* 345 U.S. 83, 93–94, 73 S.Ct. 534, 539, 97 L.Ed. 842 (1953); *Giglio v. United States,* 17 Cl.Ct. 160, 166 (1989).

The evidence presented to the board showed that Mr. Cameron engaged in adulterous activities on numerous occasions. Ms. McGuire also testified that during the days just prior to the murder of Mrs. Cameron, she had sexual intercourse with Mr. Cameron. Mr. Cameron admitted to having had sexual intercourse with several different women during his marriage, including Ms. McGuire. In addition, there was testimony that, on at least one occasion, Mr. Cameron carried on his philandering activities in his barracks while on alert status. Although plaintiff asserts he and his wife were "swingers" and that she consented to his activities, the conduct was still adulterous, and even if true, merely adds to the prejudice to good order.

This court will not conclude that the board acted arbitrarily or capriciously or without substantial evidence in finding that Mr. Cameron's conduct adversely affected his service. The charges of adultery were properly included in the airman's second enlistment term, and were proven by a preponderance of the evidence.

### 3. *The claim for back pay*

■ Mr. Cameron asserts that the Air Force wrongly withheld his pay during the two periods of his civilian incarceration.[16] By law, "[a] member of the Army, Navy, Air Force, Marine Corps, Coast Guard, or National Oceanic and Atmospheric Administration, who is absent without leave or over leave, forfeits all pay and allowances for the period of that absence, unless it is excused as unavoidable." 37 U.S.C. § 503(a) (1988). The regulations applicable to absence without leave permit the absence in this instance to be excused as unavoidable, but such a finding is not mandatory. DoDPM Table 1–3–3, Rules 4 & 5.[17] The applicable Department of Defense regulation provides that, when a member is in an unauthorized status,

> an administrative determination must be made as to whether the absence was unavoidable. Table 1–3–3 contains rules for determining whether the absence was unavoidable. If it is not excused as unavoidable, the member ... forfeits pay and allowances for the period of absence. This applies even though a court-martial finds

---

**16.** Mr. Cameron stopped receiving military pay after he was incarcerated on June 23, 1989. He began receiving pay again on August 17, 1989, after he was released pending trial. Mr. Cameron's military pay was again withheld when he was returned to civilian confinement on March 13, 1990, pursuant to his conviction. He began receiving pay again after his release on June 17, 1993, until the date of his discharge.

**17.** Rule 4 states, "[w]hen a member is absent from duty in confinement by civil authorities ... and is admitted to bail and trial is postponed indefinitely, and it is apparent that the case will not be prosecuted, then the absence *may* be excused as unavoidable." (emphasis added).

Rule 5 states, "[w]hen a member is absent from duty in confinement by civil authorities ... and was released because the case was discontinued by the prosecutor ..., then the absence *may* be excused as unavoidable." (emphasis added).

The Government has asserted, in addition, that Rules 6 and 7 are controlling. However, they apply to a conviction which was not overturned, and are therefore inapplicable.

the member not guilty of a charge of unauthorized absence, or when a finding of guilty has been disapproved by the reviewing authority.

DoDPM ¶ 10312(b).

Initially, the court holds that the apparent lack of a formal finding is not error, much less prejudicial error. That such a determination was implicitly made appears from the fact that Mr. Cameron's pay was withheld and then resumed on several separate occasions. In addition, the court concludes that the obligation to make a separate determination of unavoidability is for the benefit of the service, rather than the service member. The purpose of such a determination is clearly to prevent an automatic repayment subsequent to the successful challenge of a criminal charge.

Mr. Cameron relies on *Dock v. United States*, 27 Fed.Cl. 62 (1992), *rev'd in part*, 46 F.3d 1083 (Fed.Cir.1995), and *Cowden v. United States*, 220 Ct.Cl. 490, 600 F.2d 1354 (1979), for the proposition that the Air Force should have restored his pay and allowances once his conviction was set aside. As the defendant correctly points out, his reliance on these two cases is misplaced. Both *Dock* and *Cowden* dealt with enlisted personnel seeking back pay withheld pursuant to a conviction by military court-martial which was later set aside. *Dock*, 27 Fed.Cl. at 64; *Cowden*, 220 Ct.Cl. at 492, 600 F.2d at 1355–56. These cases, which addressed the pay effects of military confinement and court-martial forfeitures, have no application to the present case involving separate statutes and regulations.

■■■ The decision to excuse a member's absence as unavoidable is an administrative determination made by the military service. "It is a decision involving discretion and will not be disturbed by the courts in the absence of a showing that the decision was arbitrary, capricious, or unlawful." *Borys v. United States*, 201 Ct.Cl. 597, 607, 1973 WL 21342, *cert. denied*, 414 U.S. 1001, 94 S.Ct. 355, 38 L.Ed.2d 237 (1973) (citations omitted). This court has stated that "the basis

for excusing absences should be an absence of misconduct rather than a lack of criminal culpability, and that absence due to a member's misconduct is not unavoidable." *Borys*, 201 Ct.Cl. at 607. *See Austin v. United States*, 206 Ct.Cl. 719, 725–26 (concluding Navy could rightly find plaintiff's absence was not unavoidable even though Mexican detention for drug trafficking may have been based upon a confession extracted by torture), *cert. denied*, 423 U.S. 911, 96 S.Ct. 215, 46 L.Ed.2d 140 (1975). Thus, the withholding of Mr. Cameron's pay was permissible regardless of the fact that the civilian trial was set aside, provided that there was a determination of misconduct.

There is no question that the Air Force had a basis for concluding that Mr. Cameron's absence was due to his own misconduct. It concluded that he committed murder, the charge on which he was detained by the civilian authorities. The court has held that there was substantial evidence to support that charge, hence, pay was properly withheld due to Mr. Cameron's absence without leave.

### 4. *The due process argument*

■■■ While Mr. Cameron's generalized allegations of due process violations are not *per se* beyond the court's authority to consider, they add nothing to what has gone before. Mr. Cameron's "property" interest in his position is defined by statute and regulation. *See Paskert v. United States*, 20 Cl.Ct. 65, 76–78 (1990) ("service members have no constitutional rights to remain on active duty, and their rights are defined by the applicable statutes and regulations"). Insofar as this court's jurisdiction is concerned,[18] his generalized reference to violations of the Due Process Clause do no more than invoke the rights afforded him in those statutes and regulations. Those have been addressed above.

### CONCLUSION

The decisions of the Air Force to discharge plaintiff and withhold his pay during the period of his incarceration were based on

---

18. Plaintiff's contention that a stigma was created on his military record by a finding that his

absence was unavoidable does not, by itself, implicate a remedy this court can grant.

substantial evidence, were in accordance with applicable law and regulations, and were not the result of arbitrary or capricious action. Accordingly, defendant's motion for summary judgment is granted. The Clerk is directed to dismiss the complaint. No costs.

